_____

## CASE NO. 25-13298-E; 25-13698-E

_____

UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

PEN AMERICAN CENTER, INC., ET AL V. KEVIN ADAMS, ET AL
PEN AMERICAN CENTER, INC., ET AL V. CARISSA BERGOSH, ET AL

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
CASE NO. 3:23-cv-10385-TKW-ZCB

_____

## INITIAL BRIEF OF APPELLANTS, KEVIN ADAMS, PAUL FETSKO, PATRICIA HIGHTOWER, WILLIAM SLAYTON, DAVID WILLIAMS, CARISSA BERGOSH, AND TOM HARRELL

_____

J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

and

SAMANTHA DUKE
Florida Bar No. 0091403

Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133

2

APPEAL NO. 25-13298-E; 25-13698-E
Pen American Center, Inc., et al v. Kevin Adams, et al
Pen American Center, Inc. et al v. Carissa Bergosh, et al

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Eleventh Circuit Rule 26.1-1, counsel of record for Appellants,

Kevin Adams, Paul Fetsko, Patricia Hightower, William Slayton, David Williams,

Carissa Bergosh, and Tom Harrell certify that, to the best of their knowledge, the

following is a complete list of all trial judges, all attorneys, persons, associations of

persons, firms, partnerships, or corporations that have an interest in the outcome of

the particular case or this appeal, including subsidiaries, conglomerates, affiliates,

parent corporations, any publicly held corporation that owns 10% or more of the

party's stock, and other identifiable legal entities related to a party:

1.      Adams, Kevin – Appellant

2.      Agarwal, Shalini Goel – Counsel for Plaintiffs

3.      Ballard Spahr LLP – Law Firm for Plaintiffs

4.      Baer, Nicholas Eli – Counsel for Amici Florida State Conference

NAACP and Equality Florida Action, Inc., in district court

5.      Bell, Daniel William – Former Counsel for Amicus State of Florida in

district court

C-1 of 8

APPEAL NO. 25-13298-E; 25-13698-E
Pen American Center, Inc., et al v. Kevin Adams, et al
Pen American Center, Inc. et al v. Carissa Bergosh, et al

6.    Bergosh, Carisa – Appellant

7.    Bertelsmann Management SE – General partner and manager of Bertelsmann SE & Co., KGaA

8.    Bertelsmann SE & Co., KGaA – Parent corporation of Penguin Random House

9.    Bertelsmann Stiftung – Shareholder of Bertelsmann Se & Co. KGaA

10.    Bertelsmann Verwaltungsgesellschaft (BVG) – Voting shareholder of Bertelsmann SE & Co. KGaA

11.    Bolitho, The Honorable Zachary C. – United States Magistrate Judge

12.    Bouzat, Facundo – Counsel for Plaintiffs

13.    Bowles, Amy Kathryn – Counsel for Plaintiffs

14.    Boyd, Kamera Ella – Former Counsel for Plaintiffs

15.    Brannen, Sarah – Former Plaintiff

16.    Buschel, Robert C. – Counsel for Amici Florida State Conference NAACP and Equality Florida Action, Inc., in district court

17.    Buschel Gibbons, P.A. – Law Firm for Amici Florida State Conference NAACP and Equality Florida Action, Inc., in district court

C-2 of 8

APPEAL NO. 25-13298-E; 25-13698-E
Pen American Center, Inc., et al v. Kevin Adams, et al
Pen American Center, Inc. et al v. Carissa Bergosh, et al

18.    BVG-Stiftung – Shareholder of Bertelsmann Se & Co. KGaA

19.    Carlton Fields, P.A. – Law Firm for Amicus Florida Center for Government Accountability in previous appeal

20.    Calvert, Clay – Amicus in district court

21.    Compton, Kyle – Amicus in district court

22.    Corbin, Caroline Mala – Amicus in district court

23.    Costello, David Matthew – Counsel for Amicus State of Florida in district court

24.    Covington & Burling LLP – Law Firm for Amici Florida State Conference NAACP and Equality Florida Action, Inc., in district court

25.    Duke, Samantha Crawford – Counsel for Appellants

26.    Durtschi, Lindsay – Former Plaintiff, on behalf of herself and her minor children

27.    Easton, Eric B. – Amicus in district court

28.    Ekstrand, Victoria Smith – Amicus in district court

29.    Epstein, Michael M. – Amicus in district court

30.    Equality Florida Action – Amicus in district court

C-3 of 8

APPEAL NO. 25-13298-E; 25-13698-E
Pen American Center, Inc., et al v. Kevin Adams, et al
Pen American Center, Inc. et al v. Carissa Bergosh, et al

31.    Escambia County School Board – Defendant

32.    Escambia County School District – Former Defendant

33.    Fehlan, Kirsten Elizabeth – Counsel for Plaintiffs

34.    Fetsko, Paul – Appellant

35.    Fields, Goldie Felice – Counsel for Plaintiffs

36.    Florida Center for Government Accountability – Amicus in previous appeal

37.    Florida State Conference NAACP – Amicus in district court

38.    Fugate, Rachel Elise – Counsel for Amicus Calvert and Individual Amici in district court

39.    Glass, Benjamin – Former Plaintiff, on behalf of himself and his minor child

40.    Grosholz, Jeffrey J. – Counsel for Appellants

41.    Hans, G.S. – Amicus in district court

42.    Harrell, Tom - Appellant

43.    Hein, Jayni Foley – Counsel for Amici Florida State Conference NAACP and Equality Florida Action, Inc., in district court

APPEAL NO. 25-13298-E; 25-13698-E
Pen American Center, Inc., et al v. Kevin Adams, et al
Pen American Center, Inc. et al v. Carissa Bergosh, et al

44. Hightower, Patricia – Appellant

45. Johnson, George M. – Plaintiff

46. Karp, David A. – Counsel for Amicus Florida Center for Government

Accountability in previous appeal

47. Kilgarriff, Michael Robert – Former Counsel for Plaintiffs

48. Kitrosser, Heidi – Amicus in district court

49. Kussmaul, Matthew Gerard – Counsel for Plaintiffs

50. Langford, John Thomas –Counsel for Plaintiffs

51. Lev, Ori – Counsel for Plaintiffs

52. Levithan, David – Former Plaintiff

53. Lidsky, Lyrissa – Amicus in district court

54. Ludington, Sarah – Amicus in district court

55. Lukoff, Kyle – Plaintiff

56. Magarian, Gregory P. – Amicus in district court

57. Marceau, Justin – Amicus in district court

58. Marsey, John David – Counsel for Appellants

59. Martin, C. Amanda – Amicus in district court

C-5 of 8

APPEAL NO. 25-13298-E; 25-13698-E
Pen American Center, Inc., et al v. Kevin Adams, et al
Pen American Center, Inc. et al v. Carissa Bergosh, et al

60.    Niehoff, Len – Amicus in district court

61.    Novakowski, Ann – Plaintiff, on behalf of herself and her minor child

62.    Oberlander, Lynn Beth – Counsel for Plaintiffs

63.    O'Hickey, Bridget K. – Former Counsel for Amicus State of Florida in

district court

64.    Parker, Kristy L. – Counsel for Plaintiffs

65.    Parker, Sean – Plaintiff, on behalf of himself and his minor child

66.    Patrow, Kristin A. – Amicus in district court

67.    Peltz-Steele, Richard J. – Amicus in district court

68.    PEN American Center, Inc. – Plaintiff

69.    Penguin Random House LLC – Plaintiff

70.    Pérez, Ashley Hope – Plaintiff

71.    Phillips, Clarence William – Counsel for Amici Florida State

Conference NAACP and Equality Florida Action, Inc., in district court

72.    Piety, Tamara – Amicus in district court

73.    Protect Democracy – Law Firm for Plaintiffs

C-6 of 8

APPEAL NO. 25-13298-E; 25-13698-E
Pen American Center, Inc., et al v. Kevin Adams, et al
Pen American Center, Inc. et al v. Carissa Bergosh, et al

74.    Reinhard Mohn Stiftung – Shareholder of Bertelsmann SE & Co. KGaA

75.    Roy, Erica – Former Plaintiff, on behalf of herself and her minor children

76.    Rumberger, Kirk & Caldwell, P.A. – Law Firm for Appellants

77.    Safier, Paul Joseph – Counsel for Plaintiffs

78.    Safstrom, Jennifer – Amicus in district court

79.    Satterwhite, Christopher Scott – Plaintiff, on behalf of himself and his minor child

80.    Schwartzmann, Katie M. – Amicus in district court

81.    Seager, Susan E. – Amicus in district court

82.    Shapiro, Lena – Amicus in district court

83.    Shullman Fugate, PLLC – Law Firm for Amicus Calvert and Individual Amici in district court

84.    Slayton, William – Appellant

85.    Smith, Carin – Former Plaintiff, on behalf of herself and her minor children

C-7 of 8

APPEAL NO. 25-13298-E; 25-13698-E
Pen American Center, Inc., et al v. Kevin Adams, et al
Pen American Center, Inc. et al v. Carissa Bergosh, et al

86.    Smith, Nicole Sieb – Counsel for Appellants

87.    State of Florida – Amicus in district court

88.    Summers, Shawn F. – Former Counsel for Plaintiffs

89.    The Mohn Family – Shareholder of Bertelsmann SE & Co. GKaA

90.    Ugland, Erik – Amicus in district court

91.    Warren, Catherine Jane – Former Counsel for Plaintiffs

92.    Weinberg, Jonathan – Amicus in district court

93.    Wetherell, The Honorable T. Kent II – United States District Court Judge

94.    Whitaker, Henry Charles – Former Counsel for Amicus State of Florida in district court

95.    Williams, David – Appellant

## CIP CERTIFICATION

Counsel of record for Appellants, pursuant to 11th Circuit Rule 26.1-3(b), hereby certify that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

C-8 of 8

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully submit that oral argument will aid the Court in resolving the issues regarding this appeal. Appellants believe the issue presented in this appeal—that is, whether the legislative privilege shields school board members who vote to remove or restrict school library books—is a novel one and is, to Appellants' knowledge, an issue of first impression in this Court.

i

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT..................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT .............................................. i

TABLE OF CITATIONS ........................................................................................v

STATEMENT OF JURISDICTION........................................................... xii

STATEMENT OF THE ISSUES.............................................................................1

    1.      Whether school board members voting to remove or restrict public school library books is an act covered by the legislative privilege.......................................................................................1

STATEMENT OF THE CASE..................................................................................2

I.      Nature of the Case ........................................................................................2

II.     Course of Proceedings ..................................................................................3

III.   Statement of the Facts...................................................................................6

    A.      The Parties ...........................................................................................6

    B.      Legislative Background.......................................................................6

    C.      Plaintiffs' Allegations.........................................................................8

    D.      Plaintiffs' Prior Attempts to Depose the Board Members ....................9

    E.      Plaintiffs' Current Attempts to Depose the Board Members..............10

IV.    Standard of Review....................................................................................11

SUMMARY OF THE ARGUMENT ....................................................................12

ARGUMENT .........................................................................................................13

I.    The Legislative Privilege Is Applicable Given the Information Plaintiffs Seek from the Board Members .........................................................13

II.    The Board's Policy on Book Challenges Bears Out the Legislative Character of the Board Members' Votes..........................................................14

III.    The Acts Under Scrutiny Are Legislative, Not Administrative ....................16

IV.    *Crymes v. Dekalb County* Does Not Support the District Court's Order ............................................................................................................................25

    A.    The Board Members' Actions Involved Policymaking and Were Not Mere Applications of Existing Policies........................................26

    B.    That the Facts Were Specific Does Not Automatically Mean the Actions Were Not Legislative ..............................................................31

    C.    The Board Members' Decisions Impacted the General Population of the District ..................................................................32

V.    *Pen II* and *IV* Cannot Stand Given This Court's Decision in *Ellis v. Coffee County Board of Registrars* ..............................................................34

CONCLUSION ......................................................................................................37

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ...................................................................38

CERTIFICATE OF SERVICE ..............................................................40

iv

## TABLE OF CITATIONS

### CASES

*75 Acres, LLC v. Miami-Dade Cnty.*,

 338 F.3d 1288 (11th Cir. 2003) .............................................................. 26, 37

*Acevedo-Garcia v. Vera-Monroig*,

 204 F.3d 1 (1st Cir. 2000) ........................................................................15

*Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*,

 557 F.3d 1177 (11th Cir. 2009) ................................................................31

*Baytree of Inverrary Realty Partners v. City of Lauderhill*,

 873 F.2d 1407 (11th Cir. 1989) .............................................................. 31, 32

*Bogan v. Scott-Harris*,

 523 U.S. 44 (1998) ........................................................................ 14, 19, 20

*Bonner v. City of Prichard*,

 661 F.2d 1206 (11th Cir. 1981) ................................................................17

*Brown v. Crawford Cnty.*,

 960 F.2d 1002 (11th Cir. 1992) ................................................................14

*Bryant v. Jones*,

 575 F.3d 1281 (11th Cir. 2009) ........................................................ 15, 19, 37

v

*Common Cause Fla. v. Byrd*,

    674 F. Supp. 3d 1097 (N.D. Fla. 2023) ........................................................16

*Corn v. City of Lauderdale Lakes*,

    997 F.2d 1369 (11th Cir. 1993) ............................................................ 31, 33

*Crymes v. DeKalb County*,

    923 F.2d 1482 (11th Cir. 1991) .......................... 18, 19, 25, 26, 30, 31, 32, 33

*Cutting v. Muzzey*,

    724 F.2d 259 (1st Cir. 1984)........................................................................33

*DeSisto Coll., Inc. v. Line*,

    888 F.2d 755 (11th Cir. 1989) ............................................................ 21, 22

*E.E.O.C. v. Wash. Suburban Sanitary Comm'n*,

    631 F.3d 174 (4th Cir. 2011) .......................................................................17

*Ellis v. Coffee Cnty. Bd. of Registrars*,

    981 F.2d 1185 (11th Cir. 1993) ...................................... 10, 18, 34, 35, 36, 37

*Espanola Way Corp. v. Meyerson*,

    690 F.2d 827 (11th Cir. 1982) .....................................................................21

*Finch v. City of Vernon*,

    877 F.2d 1497 (11th Cir. 1989) ...................................................................17

vi

*Florida v. Byrd*,

674 F. Supp. 3d 1097 (N.D. Fla. 2023) ........................................................16

*Forrester v. White*,

484 U.S. 219 (1988)...................................................................................15

*Healy v. Town of Pembroke Park*,

831 F.2d 989 (11th Cir. 1987) ....................................................................21

*Hernandez v. City of Lafayette*,

643 F.2d 1188 (5th Cir. Unit A May 1981)....................................................17

*Hudgins v. City of Ashburn*,

890 F.2d 396 (11th Cir. 1989) ....................................................................21

*In re Hubbard*,

803 F.3d 1298 (11th Cir. 2015) .............................................. xii, 4, 11, 13, 14

*Kentner v. City of Sanibel*,

750 F.3d 1274 (11th Cir. 2014) ..................................................................26

*Khoury v. Miami-Dade Cnty. Sch. Bd.*,

4 F.4th 1118 (11th Cir. 2021) ....................................................................11

*Lee v. City of Los Angeles*,

908 F.3d 1175 (9th Cir. 2018) ....................................................................17

*Lewis v. Brown*,

409 F.3d 1271 (11th Cir. 2005) ....................................................................29

*Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*,

132 F.4th 1232 (11th Cir. 2025) .................................................... 28, 29, 30

*McKinney v. Pate*,

20 F.3d 1550 (11th Cir. 1994) .............................................................. 28, 29

*Morrison v. Amway Corp.*,

323 F.3d 920 (11th Cir. 2003) ....................................................................25

*Parnell v. Sch. Bd. of Lake Cnty.*, No. 4:23-cv-414-AW-MAF,

2024 WL 5508347 (N.D. Fla. Sept. 24, 2024) ..... 4, 16, 19, 21, 30, 31, 33, 37

*Pen Am. Ctr., Inc. v. Escambia Cnty. Sch. Dist.*, No. 24-13896,

2025 WL 1937264 (11th Cir. July 15, 2025) ............ xiii, 2, 3, 4, 9, 10, 27, 37

*PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*,

754 F. Supp. 3d 1178 (N.D. Fla. 2024) ................................................. 4, 9, 27

*PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*,

787 F. Supp. 3d 1292 (N.D. Fla. 2024)4, 9, 10, 14, 18, 19, 20, 21, 22, 23, 25,
30, 32, 33, 34, 35

*Pernell v. Fla. Bd. of Governors of State Univ.*,

84 F.4th 1339 (11th Cir. 2023) ........................................................ xii, 13, 37

viii

*Ryan v. Burlington Cnty.*,

889 F.2d 1286 (3d Cir. 1989) ...........................................................20

*Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*,

641 F.3d 197 (6th Cir. 2011) ............................................................20

*Smith v. Lomax*,

45 F.3d 402 (11th Cir. 1995) .................................................... 22, 33

*Tenney v. Brandhove*,

341 U.S. 367 (1951)..........................................................................14

*United States v. Brewster*,

408 U.S. 501 (1972)..........................................................................13

*United States v. Dawson*,

64 F.4th 1227 (11th Cir. 2023).........................................................28

*Universal Amusement Co. v. Hofheinz*,

616 F.2d 202 (5th Cir. 1980) ............................................................17

*Woods v. Gamel*,

132 F.3d 1417 (11th Cir. 1998) .................................................. 14, 21, 24, 33

## STATUTES

28 U.S.C. § 1291 ................................................................................... xii, 4

28 U.S.C. § 1331 ........................................................................................ xii

28 U.S.C. § 1343 ............................................................................................. xii

42 U.S.C. § 1983 ...............................................................................................35

Ala. Code § 36-25A-1(a) ...................................................................................22

Ala. Code, Ch. 36-25A......................................................................................22

Art. IX, Fla. Const.............................................................................................18

Fla. Stat. § 1001.32(2).......................................................................................18

Fla. Stat. § 1001.41(4).........................................................................................6

Fla. Stat. § 1001.42 ...........................................................................................21

Fla. Stat. § 1006.28 ...................................... 6, 7, 8, 15, 18, 20, 24, 32, 36

Fla. Stat. § 286.011 ...........................................................................................21

Fla. Stat. § 847.001 .............................................................................................7

Fla. Stat. § 847.012 .............................................................................................7

Ga. Code Ann. § 50-14-1(b)-(c) .......................................................................23

Ga. Code Ann., Ch. 50-14..................................................................................23

## OTHER AUTHORITIES

*Administrative Act*,

Black's Law Dictionary (12th ed. 2024) ....................................................29

*Legislate*,

Black's Law Dictionary (12th ed. 2024) ....................................................29

x

*Ministerial Act*,

    Black's Law Dictionary (12th ed. 2024) ........................................................28

Neil Duxbury, *Elements of Legislation* 3 (2013)........................................................29

*Policy*,

    Black's Law Dictionary (11th ed. 2024) ........................................................34

## STATEMENT OF JURISDICTION

Plaintiffs' suit invoked the district court's jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Appellants are past and present members of the Escambia County School Board compelled by the district court to sit for depositions over their objections based on the legislative privilege. Appellants have appealed the district court's orders under 28 U.S.C. § 1291 and the collateral order doctrine. *See In re Hubbard*, 803 F.3d 1298, 1305-07 (11th Cir. 2015); *see also id.* at 1307 n.8 (holding this Court has "jurisdiction under § 1291" over immediate appeal of discovery order denying governmental privilege); *accord Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339 (11th Cir. 2023).

The district court entered its order as to Appellants Adams, Fetsko, Hightower, Slayton, and Williams on September 8, 2025, (D.E. 226), and these Appellants timely filed a notice of appeal on September 22, 2025. (D.E. 227). The district court entered its order as to Appellants Bergosh and Harrell on October 17, 2025, (D.E. 246), and these Appellants timely filed a notice of appeal on October 21, 2025. (D.E. 250). Pursuant to this Court's precedent, the district court's orders serve as "final decision[s]," 28 U.S.C. § 1291, which are immediately appealable under the collateral order doctrine and for which this Court has jurisdiction. *See In re Hubbard*, 803 F.3d at 1305-07; *see also Pen Am. Ctr., Inc v. Escambia Cnty. Sch.*

xii

*Dist.*, No. 24-13896, 2025 WL 1937264, at *3 (11th Cir. July 15, 2025) ("In other words, even where no final judgment has been rendered, collateral appeal of a discovery order may be appropriate where a legislative privilege is asserted but denied.").

## <u>STATEMENT OF THE ISSUES</u>

1.    Whether school board members voting to remove or restrict public school library books is an act covered by the legislative privilege.

**STATEMENT OF THE CASE**[1]

## I.    Nature of the Case

This appeal arises from a First Amendment challenge to votes by the Escambia County School Board ("Board") to remove/restrict various books in its school libraries. As part of their challenge, Plaintiffs sought to depose Appellants, who are members of the Board, both past and present (collectively, "Board members"), and not parties to the underlying lawsuit. The Board members, in their limited status as non-parties, moved to quash the subpoenas served upon them and/or for protective orders, asserting these depositions were barred by the legislative privilege. The district court denied these motions, relying on its prior reasoning from an order issued when the Board—rather than the Board members individually—likewise sought a protective order on behalf of its members.[2] The seven Board members timely appealed across two appeals, which were consolidated by the Court.

The Board members maintain that the district court incorrectly determined that the Board members' votes on various books were administrative, not legislative,

---

[1] Citations to the record below designate the original docket entry ("D.E."); citations to documents in this appeal are designated as ("Doc."). Where applicable, the document's page number and/or paragraph are referenced.

[2] That order was likewise appealed to this Court, by the Board and Board members. *Pen Am. Ctr., Inc v. Escambia Cnty. Sch. Dist.*, No. 24-13896, 2025 WL 1937264, at *1 (11th Cir. July 15, 2025). This Court dismissed that appeal for lack of standing. *Id.*

and therefore not protected by the legislative privilege. The district court misconstrued relevant legal precedents and mischaracterized the actions of the Board members.

## II.    Course of Proceedings[3]

Plaintiffs sued the Board in May 2023, before amending their complaint in July 2023, (D.E. 27), and again in August 2025, claiming First Amendment violations. (D.E. 219). The Board answered Plaintiffs' operative Second Amended Complaint and generally denied Plaintiffs' allegations. (D.E. 221). At one point, Plaintiffs moved for a preliminary injunction, (D.E. 87), before withdrawing it. (D.E. 111).

The issue of legislative privilege was previously litigated before the district court, after the Board moved for a protective order on behalf of its members, (D.E. 107), which Plaintiffs opposed. (D.E. 113). In support of its motion, the Board filed the hearing transcript and order granting a similar motion for protective order the Board had filed on behalf of its members in a substantively similar case, that at the time was pending in the Tallahassee Division of the Northern District of Florida before now-Chief Judge Allen Winsor. (D.E. 123 (transcript); 125 (order, reported

---

[3] The background for this matter is detailed in the opinion for the prior appeal on this matter before this Court. *See Pen Am. Ctr., Inc.*, 2025 WL 1937264, at *1-2.

at *Parnell v. Sch. Bd. of Lake Cnty.*, No. 4:23-cv-414-AW-MAF, 2024 WL 5508347 (N.D. Fla. Sept. 24, 2024) ("*Parnell* Order"))).

A hearing was held on the Board's renewed motion for protective order before the magistrate judge to which the matter was referred, (D.E. 133 (transcript of hearing)), who, after consideration, granted the Board's motion. (D.E. 138 (reported at *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 754 F. Supp. 3d 1178 (N.D. Fla. 2024) ("*Pen I*")). Plaintiffs filed objections to the magistrate judge's order, (D.E. 143), and the Board responded in opposition. (D.E. 151). A hearing was held before the district court, at the conclusion of which the district court sustained Plaintiffs' objections and quashed the magistrate judge's order. (D.E. 156, 133:05-136:21). The district court entered an order memorializing this ruling. (D.E. 155, reported at *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 787 F. Supp. 3d 1292 (N.D. Fla. 2024) ("*Pen II*")).

The Board and Board members timely appealed the district court's order to this Court, pursuant to 28 U.S.C. § 1291 and this Court's collateral order doctrine precedent articulated in *In re Hubbard*, 803 F.3d at 1305-07. (D.E. 157). This Court dismissed this appeal for lack of jurisdiction. *See Pen Am. Ctr., Inc. v. Escambia Cnty. Sch. Dist.*, No. 24-13896, 2025 WL 1937264 (11th Cir. July 15, 2025) ("*Pen III*").

4

Following dismissal of this first appeal, Plaintiffs served the Board members with notices of taking deposition and subpoenas.[4] (D.E. 210-1; 212-1; 213-1; 214-1; 215-1; 234-1; 235-1). Over Plaintiffs' objections, the district court allowed the individual Board members to file motions to quash and/or for protective order. (D.E. 210; 212-215; 234-235). Plaintiffs responded in opposition, (D.E. 225; 244), and the district court denied these motions, based on its reasoning in *Pen II*. (D.E. 226; 246 (collectively, "*Pen IV*")). The district court stayed the depositions of the Board members pending an appeal, *id.*, which all the Board members timely took to this Court. (D.E. 227; 250). The district court subsequently also stayed summary judgment briefing below, pending this Court's decision(s) on two separate appeals also involving the question of the First Amendment's applicability, *vel non*, to public school library book removals and restrictions. *See* (D.E. 249 (citing *Penguin Random House, LLC v. Gibson*, No. 25-13181 (11th Cir.), and *Parnell v. Sch. Bd. of Escambia Cnty.*, No. 25-13485 (11th Cir.))). Plaintiffs moved to consolidate the subject appeals, a request this Court granted. (Doc. 24-2 in Case No. 25-13298).

---

[4] *Pen III* only concerned Board members Adams, Fetsko, Hightower, Slayton, and Williams; in the intervening time, Board members Hightower and Slayton have stepped down from the Board and were replaced by Board members Bergosh and Harrell, all of whom Plaintiffs currently seek to depose.

5

### III.    Statement of the Facts

#### A.    The Parties

Plaintiffs in this case are a nonprofit organization and publishing company ("Organizational Plaintiffs"), parents whose children attend school within the Escambia County School District ("District") and who sue on their behalf and on behalf of their children ("Parent Plaintiffs"), and authors whose books have been removed or restricted by the Board ("Author Plaintiffs"). (D.E. 219 ("Complaint") ¶¶ 11-28). The Board is the only named Defendant, *id.* ¶¶ 29-30, as it is the entity with the capacity to be sued under Florida law. Fla. Stat. § 1001.41(4). Board members Kevin Adams, Paul Fetsko, Patty Hightower, William Slayton, David Williams, Carissa Bergosh, and Tom Harrell are non-party individuals Plaintiffs seek to depose. *See* (D.E. 210-1; 212-1; 213-1; 214-1; 215-1; 234-1; 235-1).

#### B.    Legislative Background

Florida law imposes "the specific duty and responsibility [to be] responsible for the content of any materials made available in a school library" on school boards. Fla. Stat. § 1006.28(2)(a)1. (citation modified). This law requires school boards to maintain a policy allowing individuals to object to the use of materials, including library materials, and have in place a process to "handle all objections and [that] provides for resolution." *Id.* § 1006.28(2)(a)2. School board must also "[e]stablish and maintain a program of school library media services for all public schools in the

6

district," and "[e]ach book made available to students through a school district

library media center must be selected by a school district employee who holds a valid

educational media specialist certificate." *Id.* § 1006.28(2)(d)1.

Library materials are required to be discontinued if they:

[C]ontain[] content which is pornographic or prohibited under s. 847.012, depicts or describes sexual conduct as defined in s. 847.001(19) [absent exceptions not relevant here], [are] not suited to student needs and their ability to comprehend the material presented, or [are] inappropriate for the grade level and age group for which the material is used.

*Id.* § 1006.28(2)(a)2.b.(I)-(IV) (citation modified).

The Board met the requirements of this law by implementing two policies:

Policy 4.06, which was later amended through Policy 2522. (D.E. 219-1 pp. 100-

114, 155-59). The Board's procedures for reconsideration of library materials were

explained in section 10.B. of Policy 4.06: if any library material was objected to, a

district materials review committee would be appointed to review the challenge, read

the material, evaluate it, and render a decision on whether to retain the book, move

it to a different grade level, or remove it. *Id.* pp. 111-13. If the complainant was

dissatisfied with the committee's decision, they could appeal that decision to the

Board. *Id.* pp. 113-14. The Board members would then review the evidence and

materials given to the committee; the public was also given an opportunity to provide

input on the challenge at a publicly noticed meeting. *Id.* The Board members would

7

next vote on the challenge, which was the final decision. *Id.* p. 114. The Board members' decisions stood for at least five years before any new requests for reconsideration would be entertained, and applied to all schools in the District. *Id.* pp. 114.

Policy 2522 contains similar procedures and guidelines for challenging library materials. *Id.* pp. 156-58. Importantly, if a challenge comes before the Board members, the Board members consider it at a publicly noticed meeting, and the Board members are required to consider any evidence submitted and announce whether the challenged material meets the requirements of the Board's policy and the reasons for removal, should the Board members vote to do so. *Id.* p. 158. Books found to run afoul of section 1006.28(2)(a)2.b. are discontinued—either entirely if they run afoul of subsection (2)(a)2.b.(I), or for any grade level or age group for which such use is inappropriate or unsuitable if they run afoul of subsections (2)(a)2.b.(II)-(IV). *Id.* Decisions and votes by the Board members are among the actions Plaintiffs challenge. *See, e.g.*, (D.E. 219 ¶¶ 232-33, 243, 247).

**C.**    Plaintiffs' Allegations

Plaintiffs challenge, in part, the Board's decisions, via votes of the Board members, to remove or restrict certain books within the District's public school libraries. *See* Compl. pp. 1-2. Plaintiffs allege the Board's actions were driven by impermissible discriminatory animus. *Id.* Plaintiffs allege these (and other) actions

violate the First Amendment and bring three claims: (1) for viewpoint discrimination on behalf of the Organizational Plaintiffs and the Author Plaintiffs, *id.* ¶¶ 228-37; (2) for a violation of the so-called right to receive information in the context of a public school library, with respect to the Parent Plaintiffs, *id.* ¶¶ 238-43; and (3) a due process claim on behalf of all Plaintiffs as to a certain grouping of books voted for removal by the Board members. *Id.* ¶¶ 244-48.

**D.**    Plaintiffs' Prior Attempts to Depose the Board Members

As part of the discovery process, Plaintiffs sought to depose the Board members regarding their motivation and decision-making behind their votes on the books which the Board determined needed to be removed or restricted; the Board filed a motion for protective order, arguing that the Board members were protected by the legislative privilege. *See Pen III*, 2025 WL 1937264, at *2 (recounting history of Plaintiffs' efforts to depose Board members). This motion was initially granted by the magistrate judge, *see Pen I*, 754 F. Supp. 3d at 1185, before being quashed by the district court, *see Pen II*, 787 F. Supp. 3d at 1298, the appeal for which was dismissed by this Court for lack of jurisdiction. *See Pen III*, 2025 WL 1937264, at *5.

At the hearing on Plaintiffs' objections to *Pen I*, the district court acknowledged, "[c]ertainly there's deference [to the magistrate judge], and given the fact that Judge Winsor came to the same conclusion [in the *Parnell* case], that may

9

factor into it as well." (D.E. 156, 121:01-121:03). Despite noting now-Chief Judge Winsor's decision granting the Board's motion for protective order in a substantively similar case, the district court nonetheless determined the acts under scrutiny were administrative in nature, not legislative, and sustained Plaintiffs' objections. *Id.* 136:01-136:09. In its order, *Pen II*, the district court recognized its decision was contrary to Chief Judge Winsor's order, and that its decision was "hard to square with [this Court's opinion in] *Ellis v. Coffee County Board of Registrars*[, 981 F.2d 1185, 1190 (11th Cir. 1993),]" but contended that *Ellis* was apparently "hard to square with earlier Eleventh Circuit precedent." 787 F. Supp. 3d at 1297 & n.3. The district court declined to elaborate on this point. *See id.*

### E. Plaintiffs' Current Attempts to Depose the Board Members

After this Court dismissed the first appeal, *see Pen III*, 2025 WL 1937264, at *5, Plaintiffs renewed their efforts to depose the Board members, serving them with subpoenas for deposition. *See* (D.E. 210-1; 212-1; 213-1; 214-1; 215-1; 234-1; 235-1). The seven Board members individually filed motions to quash and/or for protective order, arguing that they were shielded from compelled examination due to the legislative privilege. (D.E. 210; 212-15; 234-35 (collectively, "MPOs")). Plaintiffs again opposed these MPOs. (D.E. 225; 244). The district court first found these MPOs were timely filed, but ultimately denied the MPOs "for the reasons stated in [*Pen II*]." *See Pen IV* at pp. 1-2. The district court stayed the Board

10

members' depositions to allow them to appeal, *id.*, which they did timely. (D.E. 227; 250). This Court, upon Plaintiffs' motion, consolidated these appeals. (Doc. 24-2 in Case No. 25-13298).

## IV.   Standard of Review

The standard of review for the district court's ruling on discovery matters is for abuse of discretion. *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1125 (11th Cir. 2021). "A ruling based on an error of law or one that reflects a clear error of judgment is an abuse of discretion." *In re Hubbard*, 803 F.3d at 1307. As relevant to these appeals, it is "an error of law, and therefore an abuse of discretion," to deny a claim of "legislative privilege" without a "proper basis." *Id.* at 1307-08.

## **SUMMARY OF THE ARGUMENT**

Plaintiffs seek to depose the seven Board members to examine their underlying reasons and mental processes behind their votes whether to remove or restrict access to school library books. These actions are unequivocally legislative in nature, and are therefore shielded from examination. The district court focused on inapposite details, improperly weighed certain factors against others, inverted its analysis by presumptively considering the Board members' actions as administrative, not legislative, and failed to correctly interpret or abide by this Court's precedent concerning legislative privilege and immunity. *Pen IV*—by incorporating the district court's reasoning in *Pen II*—takes too narrow a view of what constitutes legislative action, misconstruing this Court's precedent and impermissibly eviscerates the legislative privilege and the protections it is intended to provide. This error of law was an abuse of discretion, and requires reversal.

## ARGUMENT

### I.    The Legislative Privilege Is Applicable Given the Information Plaintiffs Seek from the Board Members

This Court should reverse *Pen IV* (and by extension *Pen II*) because the act of voting whether to remove or restrict a school library book is one protected by the legislative privilege. The district court's failure to follow applicable precedent and denial of the Board members' privilege was an abuse of discretion. *See Pernell*, 84 F.4th at 1343-44 (improper denial of asserted legislative privilege was abuse of discretion); *F.T.C. v. Nat'l Urological Grp., Inc.*, 785 F.3d 477, 481 (11th Cir. 2015) (application of incorrect legal standard or in an unreasonable or incorrect manner is an abuse of discretion).

"The legislative privilege 'protects against inquiry into acts that occur in the regular course of the legislative process and *into the motivation for those acts.*'" *In re Hubbard*, 803 F.3d at 1310 (quoting *United States v. Brewster*, 408 U.S. 501, 525 (1972)). Here, the information Plaintiffs seek from the Board members via deposition "and the scope of the legislative privilege [a]re one and the same." *Id.* at 1311. That is, "[a]ny material, documents, or information [including testimony] that d[o] not go to legislative motive [are] irrelevant," and "any that d[o] go to legislative motive [are] covered by the legislative privilege." *Id.* Even assuming *arguendo* that the Board members were motivated by an improper purpose, this does not change this analysis, as "[t]he claim of an unworthy purpose does not destroy the privilege."

13

*Tenney v. Brandhove*, 341 U.S. 367, 377 (1951). To that end, should the privilege apply—which, for the reasons explained below, it does—it requires shielding the Board members from deposition because the information Plaintiffs seek all falls within the scope of the privilege, and any other information is irrelevant and therefore not discoverable in this matter. *In re Hubbard*, 803 F.3d at 1311.

## II.    The Board's Policy on Book Challenges Bears Out the Legislative Character of the Board Members' Votes

*Pen II* erroneously found the acts in question—that is, the Board members' votes on whether to remove or restrict access to books in the District's school libraries—are administrative in nature, rather than legislative, and therefore not protected by the legislative privilege. 787 F. Supp. 3d at 1297. This was incorrect.

"Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). For example, the Supreme Court has held an act which "reflect[s] a discretionary, policymaking decision" that "implicat[ed] the [entity's] budgetary priorities and its services to constituents" bore "all the hallmarks of traditional legislation." *Id.* at 55. Or, as this Court has stated, an act is legislative "when it is policymaking and of general application." *Woods v. Gamel*, 132 F.3d 1417, 1420 (11th Cir. 1998) (citing *Brown v. Crawford Cnty.*, 960 F.2d 1002, 1011 (11th Cir. 1992)).

In this vein, certain actions "accomplished through traditional legislative functions such as policymaking and budgetary restructuring," are considered legislative. *Bryant v. Jones*, 575 F.3d 1281, 1306 (11th Cir. 2009) (quoting *Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 8 (1st Cir. 2000)). Other action have been construed to not be legislative, e.g., personnel decisions such as hiring and firing. *Forrester v. White*, 484 U.S. 219, 229-30 (1988). An analysis of the Board members' actions, carried out as they are required under Florida law, reveal their legislative character.

Under Florida law, the Board "has the specific duty and responsibility [to be] responsible for the content of any materials made available in a school library" and was required to adopt a policy regarding an objection by a parent or a resident of the county to the use of a specific material, which clearly describes a process to handle all objections and provides for resolution." Fla. Stat. § 1006.28(2)(a)1.-2. And the Board is also required to "[e]stablish and maintain a program of school library media services for all public schools in the district," such that every library book is selected by a school district employee with a valid educational media specialist certificate." *Id.* § 1006.28(2)(d)1. As part of providing for a resolution, section 1006.28(2)(a)2.b.(I)-(IV), Florida Statutes, specifically references materials "made available in a school library," and requires discontinuing the use of materials that are pornographic, depict or describe sexual conduct, are not suited to applicable student

15

needs, or are inappropriate for the grade level and age group for which the material is used.

The Board's policies—past and present—require that if a book challenge reaches the Board members, the Board members review all evidence and materials presented to the district materials review committee and, at a publicly noticed Board meeting, afford the public an opportunity to comment. The Board members consider this evidence and input, deliberate, and then vote, which is the final decision on the matter. Board members' decisions stand for at least five years before any new requests for reconsideration will be entertained, and apply to all schools in the District. *See Parnell* Order, 2024 WL 5508347, at *2 ("It made the book unavailable in all Escambia school libraries and thus to all Escambia students. And it made it unavailable forever—or at least until the Board decides to change its policy."). As explained below, the features of the Board's policies—and the actions the Board members were required to undertake pursuant to them—bear out the legislative character of their actions.

## III.    The Acts Under Scrutiny Are Legislative, Not Administrative

"[L]egislative immunity and privilege are parallel concepts, and the privilege exists to safeguard the immunity." *Florida v. Byrd*, 674 F. Supp. 3d 1097, 1103 n.2 (N.D. Fla. 2023) (citation modified); *accord Common Cause Fla. v. Byrd*, 674 F. Supp. 3d 1097, 1103 n.2 (N.D. Fla. 2023); *see also E.E.O.C. v. Wash. Suburban*

16

*Sanitary Comm'n*, 631 F.3d 174, 180-81 (4th Cir. 2011); *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018) ("While *Tenney*'s holding rested upon a finding of immunity, its logic supports extending the corollary legislative privilege from compulsory testimony to state and local officials as well."). Accordingly, the Court should find cases discussing legislative immunity equally applicable to the question of legislative privilege.

To that end, "this [C]ourt [previously] held . . . that [local legislators] possessed absolute legislative immunity from liability under s 1983 for conduct in the furtherance of their legislative duties." *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1193 (5th Cir. Unit A May 1981)[5] (citing *Universal Amusement Co. v. Hofheinz*, 616 F.2d 202, 205 (5th Cir. 1980)); *see also Finch v. City of Vernon*, 877 F.2d 1497, 1505 (11th Cir. 1989) (holding same). Thus, that the Board members were engaging in conduct "in the furtherance of their legislative duties"—i.e., voting pursuant to a state mandate regarding library book challenges—weighs in favor of it being legislative.

Critically, though, even without the existence of a statutory duty, under Florida's Constitution, the Board has the duty to "operate, control and supervise all

---

[5] Decisions of the former Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

17

free public schools" within the District. § 4(b), Art. IX, Fla. Const.; *see also* Fla. Stat. § 1001.32(2). Under the reasoning of *Pen II*, that the Board was acting pursuant to a constitutional and statutory duty would effectively render any action by the Board that did not result in the explicit creation of policy administrative. *See* 787 F. Supp. 3d at 1297.

But this is not what this Court's precedent says, as it has found legislative privilege in actions that did not result in the explicit creation of policy. *See, e.g.*, *Ellis v. Coffee Cnty. Bd of Registrars*, 981 F.2d at 1190-92; *see also Crymes v. DeKalb Cnty.*, 923 F.2d 1482, 1485 (11th Cir. 1991) (commenting that the vote of county commissioners to remove a road from the list of truck routes "was probably legislative in nature"). Indeed, this Court has observed that a broad swath of acts including "voting, speech making on the floor of the legislative assembly, preparing committee reports, and participating in committee investigations and proceedings are generally deemed legislative, and therefore, protected by the doctrine of legislative immunity." *Yeldell v. Cooper-Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992) (citation modified).

And although acting pursuant to duty, the Board members were not bound in how they individually were required to vote on the books coming before the Board for review. *See* Fla. Stat. § 1006.28(2)(a)2.b. That is, each Board member was allowed to review the factors in section 1006.28(2)(a)2.b. and exercise their

18

individual discretion in deciding how they were to vote, signaling their individual expression of priorities for the Board. *See Bogan*, 523 U.S. at 55. And taken as they were, these votes to remove or restrict certain books were prospective in that they eliminated access to the book, either entirely or for certain grades/age groups, and thus "had a substantial nexus to the legislative process." *Bryant v. Jones*, 575 F.3d 1281, 1306 (11th Cir. 2009). "All of this is consistent with the general rule that legislative acts are forward-looking policy decisions." *Parnell* Order, 2024 WL 5508347, at *2.

Just as the decision to eliminate a public employment position "may have prospective implications that reach well beyond the particular occupant of the office," *Bogan*, 523 U.S. at 56, so too is the decision to vote to remove or restrict a book legislative in that it has prospective implications that reach the entirety of the District's libraries. *Bryant*, 575 F.3d at 1306. The district court focused on the fact that the decisions applied "to a specific book," *Pen II*, 787 F. Supp. 3d at 1297, when the critical inquiry is whether the decision impacts "the general population." *Crymes*, 923 F.2d at 1485. And here, that was the impact of these votes: the removal or restriction of books across the entirety of the District, that regulated the access of every student within the District. *See Parnell* Order, 2024 WL 5508347, at *2 ("It made the book unavailable in all Escambia school libraries and thus to all Escambia students.").

These decisions thus embodied the Board members' legislative expressions by weighing various priorities before acting. *Bogan*, 523 U.S. at 55; *see also Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 217 (6th Cir. 2011) (finding school board engaged in legislative activity when it made decision to eliminate alternative school as a result of weighing budgetary priorities). As this Court has explained, legislative acts have a "general scope or, to put it another way, legislation involves line-drawing." *Yeldell*, 956 F.2d at 1062 (quoting *Ryan v. Burlington Cnty.*, 889 F.2d 1286, 1290-91 (3d Cir. 1989)). Here, that is exactly what the Board members engaged in, a fact the district court conceded. *Pen II*, 787 F. Supp. 3d at 1297. The district court's error is compounded when considering these acts were part of the Board's statutorily-required "services to constituents," *Bogan*, 523 U.S. at 45, in that the Board is required to offer a media center for all schools in the District, and regulate all materials within these centers. Fla. Stat. § 1006.28(2)(a)1., (2)(d).

But *Pen II* brushed this aside, even conceding that the Board members "must exercise discretion, engage in 'line-drawing,' and make 'policy judgments' when deciding whether a particular book is educationally suitable, grade-level appropriate, etc.," as well as the fact the Board's decisions have "district-wide impact[s]." 787 F. Supp. 3d at 1297. The district court disregarded that all of these militate in favor of

20

an act being legislative, and instead focused only on the fact that the Board was "applying policy, not formulating it," based on specific facts. *Id.*

Even assuming this is accurate—which, as explained below, it is not—these factors are not dispositive, and nothing in this Court's precedent elevates these beyond other considerations this Court has pointed to in its legislative immunity/privilege precedent. Indeed, this Court has repeatedly reiterated that "voting, debate and reacting to public opinion are manifestly in furtherance of legislative duties." *DeSisto Coll., Inc. v. Line*, 888 F.2d 755, 765 (11th Cir. 1989); *accord Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir. 1982); *Hudgins v. City of Ashburn*, 890 F.2d 396, 406 n.20 (11th Cir. 1989); *Healy v. Town of Pembroke Park*, 831 F.2d 989, 993 (11th Cir. 1987). Here, it is undisputed that the Board members voted on these books, after deliberation, and that the public was permitted to provide input to which the Board members reacted. *See* (D.E. 219-1 pp. 100-114, 155-59). This shows the acts were legislative, especially as under Florida law no formal action can be taken by the Board members—which act as a single body—outside the public eye. Fla. Stat. §§ 286.011(1), 1001.42; *see also Woods*, 132 F.3d at 1420 (noting vote needed to pass county budget was legislative). And while voting is not dispositive, it cannot be overlooked as a factor to consider. *DeSisto Coll., Inc.*, 888 F.2d at 765; *Parnell* Order, 2024 WL 5508347, at *2 n.1 ("So voting is relevant but not dispositive.")

21

It is unsurprising then that even the district court observed that the Board's actions bore "some hallmarks of a legislative act." *Pen II*, 787 F. Supp. 3d at 1297. Where the district court erred was its decision to give these factors less weight because school boards in Florida can only "take [formal] actions at a publicly noticed meeting at which its vote is cast in public." (D.E. 156, 118:02-118:05). But nothing in this Court's legislative privilege precedent has said that an action is to be given any less weight simply because the entity in question is required to meet in public, deliberate, and vote in response to public opinion. *See DeSisto Coll., Inc.*, 888 F.2d at 765. The only indication this Court has given is when it stated that voting is not dispositive. *See Smith v. Lomax*, 45 F.3d 402, 406 (11th Cir. 1995).

Moreover, Florida is not unique in requiring its legislative bodies—like the Board and its members—to take action "at a publicly noticed meeting at which its vote is cast in public." (D.E. 156, 118:04-118:05). Like Florida, Alabama and Georgia also impose such requirements. For example, the Alabama Open Meetings Act requires:

> It is the policy of this state that the deliberative process of governmental bodies shall be open to the public during meetings as defined in Section 36-25A-2(6). Except for executive sessions permitted in Section 36-25A-7(a) or as otherwise expressly provided by other federal or state laws or statutes, all meetings of a governmental body shall be open to the public and no meetings of a governmental body may be held without providing notice pursuant to the requirements of Section 36-25A-3.

Ala. Code § 36-25A-1(a); *see generally* Ala. Code, Ch. 36-25A.

22

Georgia law provides similarly:

> Except as otherwise provided by law, all meetings shall be open to the public. All votes at any meeting shall be taken in public after due notice of the meeting and compliance with the posting and agenda requirements of this chapter.
>
> . . .
>
> The public at all times shall be afforded access to meetings declared open to the public pursuant to subsection (b) of this Code section. Visual and sound recording during open meetings shall be permitted.

Ga. Code Ann. § 50-14-1(b)-(c); *see generally* Ga. Code Ann., Ch. 50-14.

Thus, the district court's statement that it was "not sure how significant" it was that the Board members' actions bore the hallmarks of legislation—simply because the Board members are required to meet and vote in public, (D.E. 156, 118:06-118:11)—is unsupported by precedent or a review of the other states within this circuit to whom this Court's precedent is applicable. The district court inverted this Court's precedent by construing the Board members' actions as administrative as the default, and effectively requiring the Board members to prove they were legislative. *See Pen II*, 787 F. Supp. 3d at 1297-98. But the opposite is true, as Chief Judge Winsor observed:

> [T]he law we're dealing with says personnel decisions don't count, zoning enforcement actions don't count. *There's really the only two categories that courts have carved out here*. . . . Is it more like a personnel or a zoning enforcement decision, or is it more like a broader policy matter.

23

(D.E. 123-1, 25:08-25:18 (emphasis added)). That is, the presumption is actually the opposite: actions taken by legislators—like the Board members—should be considered legislative by default, and it is on Plaintiffs to displace this presumption. *See id.*

When viewing the Board members' actions in their totality, it becomes clear they are legislative, as they were votes, taken in response to public opinion and input and following debate, done in furtherance of their duties and in service to their constituents, and were forward-looking and impacted the entirety of the District. Similar to the law in *Woods*, where the "statute under which the commissioners were given the authority to pass this budget requires an annual budget for *all* county expenses," 132 F.3d at 1420, so too do sections 1006.28(2)(a)2.b. and (2)(d) make the Board responsible for *all* books in its libraries. And just as passing a budget "sets spending priorities" and "affect[s] all county residents," so too are book removals and restrictions expressions of the Board's "priorities," that impact every school and student in the District, making them acts that are "both policymaking and of general application," and thus legislative in nature. *Id.*

24

**IV.** *Crymes v. Dekalb County* **Does Not Support the District Court's Orders**

The district court heavily focused on this Court's decision in *Crymes v. DeKalb County*, 923 F.2d at 1482,[6] in which this Court stated:

> A legislative act involves policy-making rather than mere administrative application of existing policies. . . . If the facts utilized in making a decision are specific, rather than general, in nature, then the decision is more likely administrative. Moreover, if the decision impacts specific individuals, rather than the general population, it is more apt to be administrative in nature.

923 F.2d at 1485 (citations omitted). "Under those standards," the district court found, the Board's decisions were "functionally an administrative act" despite the "hallmarks" of legislation its actions nonetheless bore. *Pen II*, 787 F. Supp. 3d at 1297. This was incorrect.

Notably, nothing in *Crymes* purported to abrogate, eliminate, or undo this Court's existing precedent on the legislative privilege.[7] *See generally* 923 F.2d at 1482. Further, the *Crymes* Court did not purport or contend that its standard was the test by which all legislative actions must be measured. Rather, it laid out standards

---

[6] This, despite Plaintiffs' concession at the hearing before the district court that *Crymes* is not "the most analogous in the fact[s]," and that they "don't think *Crymes* is so special." (D.E. 156, 82:15-83:09).

[7] And to the extent *Crymes* contradicts those precedents, it must yield. *Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003) (noting "intra-circuit split[s]" are resolved by "look[ing] to the line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel" (quotation omitted)).

by which various acts could be measured—just as this Court's precedent discussed *supra* also laid out various standards against which to measure acts. *Crymes* is therefore not the dispositive test the district court made it out to be; which makes sense given the Board members sometimes act in a legislative capacity, and sometimes in an executive/administrative capacity. *See Kentner v. City of Sanibel*, 750 F.3d 1274, 1280 (11th Cir. 2014) ("There is no dispositive test to determine which actions are executive and which are legislative, because local governing bodies often do both."); *cf. 75 Acres, LLC v. Miami-Dade Cnty.*, 338 F.3d 1288, 1296 (11th Cir. 2003) ("[T]his circuit has not articulated a test for distinguishing between legislative and adjudicative action . . . ."). Moreover, an examination of *Crymes* shows it does not support the district court's ultimate conclusion.

### A. The Board Members' Actions Involved Policymaking and Were Not Mere Applications of Existing Policies

Starting with the first prong: "[a] legislative act involves policy-making rather than mere administrative application of existing policies." *Crymes*, 823 F.2d at 1485. Here, the Board members did not merely administratively apply the Board's existing policies; instead, each Board member undertook considered deliberation, in response to public input, debated the issue, and voted in an expression of their individual discretionary authority, resulting in a decision that resulted in policymaking specific to the Board and reflected the needs of the District. *See Pen I*, 754 F. Supp. 3d at

26

1183-84 ("[D]ifferent school boards across the State of Florida have made different decisions about whether particular books should be on library shelves in their respective districts. This tends to show that the School Board members were not just mechanically applying a state law that required a particular outcome nor were they merely performing a managerial function when they voted (after considering public comment and having debate) to remove or restrict the books. Instead, the School Board members were making a judgment call and engaging in 'line-drawing' on a matter of public concern." (citation and footnote omitted)).

The Board members were not blindly applying Board policies and, in many instances, the Board members were not acting unanimously; and the majority often voted contrary to the district materials review committee established to review materials prior to a final appeal to the Board. *See, e.g.*, (D.E. 27 ¶¶ 129, 131 (Board voted 3-2 to restrict a book to 11th and 12th graders, despite its materials review committee unanimously recommending its inclusion in all high school libraries)); *Pen III*, 2025 WL 1937264, at *1-2 (noting Board's "final decision-making authority on what, if any, restrictions would be placed on the books," and that "[i]n some instances, the Board voted to remove books from all libraries, and in other instances the Board voted to allow only older students to access the books").

Thus, in determining whether the Board members' actions were of a policymaking nature, it cannot be overlooked that the Board members were line-

27

drawing, or that their decisions affected all schools and students in the District. *Contrast Yeldell*, 956 F.2d at 1063 ("Because the decisions of Commissioner Davis involved no line-drawing and affected only a few individuals at Cooper Green Hospital, the policy-making power that is the cornerstone of legislative activity was not implicated."). In an analogous situation, when considering whether actions were "executive" or "legislative," this Court commented that "'[e]xecutive acts characteristically apply to a limited number of persons' and 'typically arise from the *ministerial or administrative activities* of members of the executive branch." *Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th 1232, 1242 (emphasis added) (quoting *McKinney v. Pate*, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994) (en banc)).

This Court's use of "ministerial" in proximity to "administrative" should not be overlooked when considering how to define "administrative" for legislative privilege purposes. *Cf. United States v. Dawson*, 64 F.4th 1227, 1237 (11th Cir. 2023) (noting statutory interpretation canon of *noscitur a sociis*, which "counsels that a word is given more precise content by the neighboring words with which it is associated" (citation omitted)). That is, an administrative or "ministerial act" is one "performed without the independent exercise of discretion or judgment," and is often "mandatory." *Ministerial Act*, Black's Law Dictionary (12th ed. 2024). Similarly, an "administrative act" is one "made in a management capacity; esp., an act made

28

outside the actor's usual field." *Administrative Act*, Black's Law Dictionary (12th ed. 2024).

Here, the votes by the Board members were not made without the independent exercise of discretion or judgment, nor were their votes predetermined or mandatory in nature. Likewise, voting on book removals/restrictions is not outside the Board members' usual field; rather, it is a duty and power expressly granted them by the Florida Constitution and Florida Statutes. This neatly dovetails with this Court's finding that "[l]egislative acts . . . generally apply to a larger segment of—if not all of—society; laws and *broad-ranging executive regulations* are the most common examples." *Littlejohn*, 132 F.4th at 1242 (emphasis added) (quoting *McKinney*, 20 F.3d at 1557 n.9); *cf. Legislate*, Black's Law Dictionary (12th ed. 2024) ("To legislate on a matter is to take action which is intended to regulate that matter in some way (quoting Neil Duxbury, *Elements of Legislation* 3 (2013))).

So, even if the Board members' actions could be considered broad-ranging regulations—to the extent they touch all schools in the District—they would still be legislative. "For example, a school board rule of general applicability is 'legislative' action." *Littlejohn*, 132 F.4th at 1242. "But an 'administrative decision' that 'affects only a limited class of persons' is a 'textbook "executive act."'" *Id.* (quoting *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005)). Just so here, where the Board members made broad-ranging rulings that were generally applicable in nature across

the entirety of the District and affected all students in the District. *Parnell* Order, 2024 WL 5508347, at *2.

This reveals that the district court's decision to narrowly focus on the Board members' supposed "*application* of the standards in state law" and the Board's policies was erroneous. *Pen II*, 787 F. Supp. 3d at 1297. As shown, this Court has not defined "policymaking" for legislative purposes at such a granular or narrow level, but has instead concluded that rulemaking and even broad-ranging executive regulations fall within the umbrella of legislative action. *See, e.g.*, *Crymes*, 923 F.2d at 1485; *Littlejohn*, 132 F.4th at 1242. Indeed, in *Crymes* in the very sentence following this Court's description of legislative acts as involving "policy-making," it noted that "rulemaking" was considered legislative. 923 F.2d at 1485. The district court's overly technical definition was flawed.

"All of this is consistent with the general rule that legislative acts are forward-looking policy decisions." *Parnell* Order, 2024 WL 5508347, at *2. "The Board voted after hearing public input on a controversial issue about what types of books should be available to public school children. Its decision did not affect just these Plaintiffs . . . [i]t made the book unavailable in all Escambia school libraries and thus to all Escambia students." *Id.* "And it made it unavailable forever—or at least until the Board decides to change its policy. The decision was thus unlike an individual personnel decision or some other administrative decision that affected only a few

30

people." *Id.* (citation omitted). "It was a quintessential policy decision about how best to educate Escambia County children." *Id.*; *see also Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1225 (11th Cir. 2009) ("[E]ducational suitability questions," including about what books are suitable for students, "are the perfect example of a core educational *policy matter* within the exclusive province of local school boards." (emphasis added)).

**B.** <u>That the Facts Were Specific Does Not Automatically Mean the Actions Were Not Legislative</u>

That the facts utilized were specific in nature does not automatically transform a legislative act into an administrative one. As this Court noted, this simply means "the decision is *more likely* administrative." *Crymes*, 923 F.2d at 1485 (emphasis added). Like the other factors discussed herein, this is not dispositive and merely favors a potential finding of administrative action. Further, this Court has found that acts taken with regard to specific facts can still be legislative in nature. *E.g.*, *Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407, 1409 (11th Cir. 1989) (decision affecting specific parcel of land was legislative). As evidence of this principle, this Court has held that "even the decision about which zoning classification should be applied to a specific parcel of land, are legislative actions." *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1392 (11th Cir. 1993). Likewise, the Board members' decision about which, if any, of the classifications in section

31

1006.28(2)(a)2.b. applied to certain books—while resting on specific facts—are nonetheless legislative acts. This is supported when combined with the multitude of factors, discussed above and below, that all lean towards a conclusion that the Board members' actions were legislative.

**C.**    The Board Members' Decisions Impacted the General Population of the District

*Crymes*' final prong supports the Board members' position. "[I]f the decision impacts specific individuals, rather than the general population, it is more apt to be administrative in nature." *Crymes*, 923 F.2d at 1485. Oddly, *Pen II* gave this factor decreased importance, stating "the fact that a book removal/restriction decision may have district-wide impact does not change the fact-specific nature of the decision." 787 F. Supp. 3d at 1297. But nothing in *Crymes* holds one of these factors is more important than the other. *See generally* 923 F.2d at 1485. The third factor, like the second, includes caveated language explicitly calling attention to the fact it is not dispositive by noting specific application makes a decision "more apt to be administrative." *Id.* The district court's favoring of one factor over another—with no explanation why other than it supported the district court's result—was in error.

Moreover, that a vote only concerns a single object does not change the nature of the decision's general application. *See, e.g.*, *Baytree*, 873 F.2d 1407 at 1409 (affirming district court's grant of legislative immunity to individual defendants who

denied plaintiff's application to rezone specific property); *Corn*, 997 F.2d at 1392; *see also Smith*, 45 F.3d at 406 n.10 (noting the Court had, in *Crymes*, suggested that the "vote to remove a particular road from the list of available truck routes . . . affected the general population, [and] was therefore 'legislative in nature'" (citing 923 F.2d at 1485)).

Rather, the question is the result, i.e., how is the decision applied and who is affected. Here, the Board members' votes have District-wide impact and affect every school and student within the District; the decision reaches each student equally, in that if a book is removed or only made available to certain students, then that decision applies across all schools. *See Woods*, 132 F.3d at 1420; *see also Cutting v. Muzzey*, 724 F.2d 259, 261 (1st Cir. 1984) (noting an action which "singles out specific individuals and affects them differently from others" renders a decision administrative (citation modified)). The district court incorrectly interpreted *Crymes* to mean a decision which impacted specific *books* was the same as those impacting specific *individuals*. *Pen II*, 787 F. Supp. 3d at 1297. But books are not individuals, and the Board's actions did not impact only specific individuals; they impacted every student in the District by regulating access to these books. *Parnell* Order, 2024 WL 5508347, at *2.

Thus, just because it is individual books which may be voted upon, this does not detract from the fact that the Board members' decisions resulted in generally

33

applicable policy, which impacted the entire District. *Id.*; *Yeldell*, 956 F.2d at 1063-63 ("Where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration."). That is, the Board established a "standard course of action" with respect to how these books are to be regulated and made accessible (if at all) in the District, policymaking which was "officially established" by the Board members via their votes. *Policy*, <u>Black's Law Dictionary</u> (11th ed. 2024).

Accordingly, when looking at *Crymes*' three factors, they support the Board members' actions. *Pen IV*—by incorporating the reasoning of *Pen II*—incorrectly applied the law and was an abuse of discretion, compelling reversal. *F.T.C.*, 785 F.3d at 481.

**V.    *Pen II* and *IV* Cannot Stand Given This Court's Decision in *Ellis v. Coffee County Board of Registrars***

Finally, the district court abused its discretion because its orders cannot be reconciled with this Court's precedent in *Ellis v. Coffee County Board of Registrars*, 981 F.2d at 1185, a fact the district court effectively acknowledged. *Pen II*, 787 F. Supp. 3d at 1297 n.3. Indeed, even Plaintiffs conceded that:

> *Ellis* is a difficult case for us. It's not very clear what's happening there. I think I understand what's happening, but I acknowledge it's not – there's not a lot of analysis there. And so I think if *Ellis* is a one-off, that's not a reason to reject the standard and throw out the baby with the bathwater.

(D.E. 156, 86:15-86:22).

Plaintiffs' confusion is unfounded—as is their attempt to downplay the binding nature of *Ellis* or depict it as a "one-off," *id.*—and likely belies a recognition that, in the absence of any case on all fours, *Ellis* is the most factually analogous to this matter. There, this Court "held that county commissioners were performing their legislative function when they determined the voting eligibility of specific electors." *Pen II*, 787 F. Supp. 3d at 1297 n.3 (citing *Ellis*, 981 F.2d at 1190). This concession demonstrates the error of the district court, and why it should be reversed.

In *Ellis*, this Court determined a local county commission was entitled to legislative immunity for its determination regarding the voting status of a family that moved outside the county. 981 F.2d at 1187. There, the county commission was asked to assist the local board of registrars with ascertaining which voters were qualified to vote in the county. *Id.* As part of this undertaking, the commission investigated the voter eligibility of the appellants, concluded they were not eligible voters in the county, and informed them of this decision. *Id.* at 1187-88. Part of this investigation involved the county commission ordering a survey to be done to determine whether the appellants lived within county boundaries. *Id.* at 1188. The appellants later sued the county commission under 42 U.S.C. § 1983, and the county commission asserted legislative immunity as a defense. *Id.* at 1189.

On appeal, this Court held the county commissioners had acted in their legislative capacity and therefore were entitled to immunity. *Id.* at 1190-92. The Court noted that the county commission had been delegated by state law the task of designating precinct boundary lines. *Id.* at 1190. Thus, in acting pursuant to "statutory guidelines" (as well as a consent decree), the county commissioners "clearly were performing their legislative function when they investigated the voting eligibility" of individuals and ultimately participated in the removal of their names from voting lists. *Id.* This was bolstered by the commissioners' decision to have a survey done of the appellants' property, which aided the commission's decision and helped "clarify any ambiguities." *Id.* at 1191. The *Ellis* Court noted that even had the appellants been able to prove conspiracy or bad faith by the commissioners, "an unworthy purpose does not remove absolute immunity protection from legislators acting in their legislative capacity." *Id.*

*Ellis* shows how the Board members' actions were legislative in nature. The Board members—like the county commissioners—had a statutory duty to maintain responsibility for all library materials in its schools and was required to have a policy on the matter. *Compare* Fla. Stat. § 1006.28(2)(a)1.-2., *with Ellis*, 981 F.2d at 1190. The Board members—like the county commissioners ordering a survey to help clarify any ambiguities—allowed challenges to percolate before a subordinate committee for review and evaluation prior to any rendering of its final decision.

36

*Compare* (D.E. 219-1 pp. pp. 100-114, 155-59), *and Pen III*, 2025 WL 1937264, at *1, *with Ellis*, 981 F.2d at 1191. And the Board members' decisions—like the county commissioners—had general application because they affected the entire District, just as the county commission's determination had general application to the entire county because it meant anyone who owned appellants' property would be disallowed from voting in the county. *Compare Parnell* Order, 2024 WL 5508347, at *2, *with Ellis*, 981 F.2d at 1190; *see also 75 Acres, LLC*, 338 F.3d at 1297. And the Board members' decisions—like the county commissioners'—was prospective in nature in that it would stand for the future. *See Parnell* Order, 2024 WL 5508347, at *2; *see also Bryant*, 575 F.3d at 1306 (noting Supreme Court's determination that measures which have "prospective impact" are legislative in nature).

Taken together, the similarities between the actions of the county commissioners in *Ellis* and the Board members cannot be ignored. The district court was aware of this, yet deviated regardless. This failure to follow precedent was an abuse of discretion, and should be reversed. *Pernell*, 84 F.4th at 1343-44; *F.T.C.*, 785 F.3d at 481.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's Orders under review, and remand with instructions to grant the Board members' Motions to Quash and for Protective Order.

37

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, <u>TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

I certify that this Brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) because this Brief contains 8,780 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Eleventh Circuit Rule 32-4.

I further certify that this Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. Civ. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14 point font.

<u>s/ Jeffrey J. Grosholz</u>
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
Rumberger, Kirk & Caldwell, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

and

SAMANTHA DUKE
Florida Bar No. 0091403

Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133

Attorneys for Appellants

39

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on December 23, 2025, I electronically filed the foregoing Brief by using the Eleventh Circuit Court ECF system which will send via e-mail a Notice of Docket Activity to the following:   Kristy L. Parker at kristy.parker@protectdemocracy.org;       Shalini       Goel       Agarwal       at shalini.agarwal@protectdemocracy.org;       Kirsten       Elizabeth       Fehlan       at fehlank@ballardspahr.com;       Lynn       Beth       Oberlander       at oberlanderl@ballardspahr.com; Paul Joseph Safier at safierp@ballardspahr.com; Ori       Lev       at       ori.lev@protectdemocracy.org;       Goldie       Fields       at fieldsg@ballardspahr.com;   Facundo   Bouzat   at   bouzatf@ballardspahr.com; Matthew Kussmaul at kussmaulm@ballardspahr.com and Amy Bowles at amy.bowles@protectdemocracy.org (Counsel for Plaintiffs).

I FURTHER CERTIFY that per the Briefing Notice dated October 7, 2025, the clerk will send a notice directing each party to send to the court the specified number of paper copies of appendices within 7 days of the notice. No copies will be mailed this 23rd day of December, 2025.

<div style="margin-left: 40%;">

s/ Jeffrey J. Grosholz
_____
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com

</div>

JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

and

SAMANTHA DUKE
Florida Bar No. 0091403
Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133

Attorneys for Appellants

41