_____

**CASE NOS. 25-13298-E; 25-13698-E**

_____

UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

PEN AMERICAN CENTER, INC., ET AL V. KEVIN ADAMS, ET AL
PEN AMERICAN CENTER, INC., ET AL V. CARISSA BERGOSH, ET AL

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
CASE NO. 3:23-cv-10385-TKW-ZCB

_____

**REPLY BRIEF OF APPELLANTS, KEVIN ADAMS, PAUL FETSKO,
PATRICIA HIGHTOWER, WILLIAM SLAYTON,
DAVID WILLIAMS, CARISSA BERGOSH, AND TOM HARRELL**

_____

J. DAVID MARSEY
Florida Bar No.: 0010212
E-mail: dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.: 0017056
E-mail: nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.: 1018568
E-mail: jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel: 850.222.6550
Fax: 850.222.8783

 and

SAMANTHA DUKE

Florida Bar No. 0091403
Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133
Attorneys for Appellants

# TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................. ii

ARGUMENT ..................................................................................................1

I.    Plaintiffs' Briefing Requires Clarification ......................................1

    A.    Plaintiffs' Statement of Facts Is Nearly Devoid of Established Facts ..........................................................................................1

    B.    The Legislative Privilege Issue Is Properly Before This Court ...........2

    C.    Plaintiffs Are Incorrect Regarding the "Superintendent-Removed Books" and "Mass-Removed Books" ...................................3

II.   the Actions Under Scrutiny Are Legislative ....................................4

    A.    Plaintiffs' Reading of Policymaking Is Too Narrow ...........................4

    B.    The Board Members' Actions Were Not Administrative .....................9

    C.    Plaintiffs Overly Rely on *Crymes* .......................................................11

    D.    Plaintiffs Misapprehend *Ellis* ..............................................................16

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ..............................................................................18

CERTIFICATE OF SERVICE ....................................................................20

# TABLE OF CITATIONS

## CASES

*Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*,

    557 F.3d 1177 (11th Cir. 2009) ...............................................................5, 14

*Bogan v. Scott-Harris*,

    523 U.S. 44 (1998) .................................................................................7, 10

*Bonner v. City of Prichard*,

    661 F.2d 1206 (11th Cir. 1981) (en banc) .......................................................11

*Brown v. Crawford Cnty.*,

    960 F.2d 1002 (11th Cir. 1992) ...............................................................5, 13

*Bryant v. Jones*,

    575 F.3d 1281 (11th Cir. 2009) .....................................................................7

*City of Green Cove Springs v. Donaldson*,

    348 F.2d 197 (5th Cir. 1965) ........................................................................11

*Corn v. City of Lauderdale Lakes*,

    997 F.2d 1369 (11th Cir. 1993) .....................................................................13

*Crymes v. DeKalb County*,

    923 F.2d 1482 (11th Cir. 1991) .............................................................. 11, 12

ii

*Ellis v. Coffee Cnty. Bd. of Registrars*,

    981 F.2d 1185 (11th Cir. 1993) ...............................................................9, 17

*Espanola Way Corp. v. Meyerson*,

    690 F.2d 827 (11th Cir. 1982) .......................................................................4

*Finch v. City of Vernon*,

    877 F.2d 1497 (11th Cir. 1989) .....................................................................6

*Harris v. District of Columbia*,

    256 U.S. 650 (1921)......................................................................................11

*In re Hubbard*,

    803 F.3d 1298 (11th Cir. 2015) ...................................................................16

*Israel v. DeSantis*,

    No. 4:19cv576-MW/MAF, 2020 WL 2129450 (N.D. Fla. May 5, 2020) ......8

*Littlejohn v. School Board of Leon County*,

    132 F.4th 1232 (11th Cir. 2025) ..................................................................10

*Minton v. St. Bernard Parish School Board*,

    803 F.2d 129 (5th Cir. 1986) .......................................................................14

*Morrison v. Amway Corp.*,

    323 F.3d 920 (11th Cir. 2003) .....................................................................13

*Nealy v. Warner Chappell Music, Inc.*,

    60 F.4th 1325 (11th Cir. 2023 .....................................................................12

iii

*Owen v. City of Independence*,

    445 U.S. 622 (1980)......................................................................................10

*Parnell v. Sch. Bd. of Lake Cnty.*,

    No. 4:23-cv-414-AW-MAF, 2024 WL 5508347, at *2 (N.D. Fla. Sept. 24,

    2024) .......................................................................................................7, 14

*PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*,

    787 F. Supp. 3d 1292 (N.D. Fla. 2024) ..........................................................8

*Reiter v. Sonotone Corp.*,

    442 U.S. 330 (1979)......................................................................................12

*Ryan v. Burlington Cnty.*,

    889 F.2d 1286 (3d Cir. 1989) .......................................................................16

*Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*,

    59 F.4th 1158(11th Cir. 2023).....................................................................13

*United States v. Howard*,

    28 F.4th 180 (11th Cir. 2022) ....................................................................3, 4

*United States v. Sineneng-Smith*,

    590 U.S. 371 (2020)........................................................................................2

*Watts v. Joggers Run Prop. Owners Ass'n, Inc.*,

    133 F.4th 1032 (11th Cir. 2025)................................................................3, 4

iv

*Woods v. Gamel*,

    132 F.3d 1417 (11th Cir. 1998) ................................................................8, 9

*Yeldell v. Cooper Green Hosp., Inc.*,

    956 F.2d 1056 (11th Cir. 1992) ............................................................5, 15

## **STATUTES**

Fla. Stat. § 1001.32 ....................................................................................5

Fla. Stat. § 1006.28. ...............................................................................5, 17

## **OTHER AUTHORITIES**

Fla. Const. art. IX, § 4................................................................................5

## **RULES**

11th Cir. R. 28-1 .......................................................................................1

Fed. R. Civ. P. 8 ........................................................................................1

**ARGUMENT**[1]

## I.    Plaintiffs' Briefing Requires Clarification

### A.    Plaintiffs' Statement of Facts Is Nearly Devoid of Established Facts

The Board members dispute Plaintiffs' characterization of the facts. *See* AB at 4-10. Namely, Plaintiffs rely upon and advance numerous allegations from their operative pleading as if they are proven facts—rather than just allegations which have been denied. *See* (D.E. 221); *see also* Fed. R. Civ. P. 8(b)(1)(B), (2), (6). Moreover, Plaintiffs' statement of facts does not identify which "[i]nferences [are] drawn from facts," 11th Cir. R. 28-1(h)(ii), likely because the majority of their factual statements are unsupported inferences.

Plaintiffs, for example, seek to characterize the nature of the challenges made to the books at issue in this matter, *see, e.g.*, AB at 5, the reasoning behind the Board's decision to suspend the work of subordinate book review committees, *see, e.g.*, *id.* at 8, and comments by individual Board members concerning challenged books. *See, e.g.*, *id.* All these allegations have been denied by the Board. *See* (D.E. 221). None of these allegations—including Plaintiffs' version of events—have yet been proven or definitively established.

---

[1] Citations to the record below designate the original docket entry ("D.E."). Plaintiffs' Brief is cited as "AB"; the Board members' Brief is cited as "IB". Where applicable, the document's page number and/or paragraph are referenced.

B.    The Legislative Privilege Issue Is Properly Before This Court

In addition, Plaintiffs allude to a potential waiver by the original Board members of the legislative privilege. *See* AB at 15 (advancing argument that the original Board members' motions for protective order were untimely). This is likely an effort to preclude the Court's resolution of the underlying legislative privilege issue because Plaintiffs recognize the privilege's applicability here. These attempts fail for multiple reasons.

First, Plaintiffs have not affirmatively raised any waiver arguments in their briefing, so it is not before the Court. *See United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) (noting party presentation principle and that federal courts "do not, or should not, sally forth each day looking for wrongs to right," and "normally decide only questions presented by the parties" (citation omitted)). Second, this matter involves two appeals: Plaintiffs' efforts to depose the original Board members (Adams, Fetsko, Hightower, Slayton, and Williams)—whose motions for protective order and/or to quash Plaintiffs argued were untimely—as well as the new Board members (Bergosh and Harrell)—for which no timeliness arguments were made. *See* AB at 15-16. Because at a minimum there is no timeliness issue with respect to Bergosh and Harrell, the underlying question of whether the legislative privilege applies is squarely before this Court, a fact Plaintiffs tacitly conceded by seeking to consolidate these appeals. *See id.* at 16.

2

C.     Plaintiffs Are Incorrect Regarding the "Superintendent-Removed Books" and "Mass-Removed Books"

Finally, Plaintiffs argue "the Superintendent-Removed Books and the Mass-Removed Books" were removed without opportunity for public input. AB at 33 n.13. This is incorrect. The "Superintendent-Removed Books" were removed by Board action on June 17, 2025, a fact Plaintiffs acknowledge. *Id.* at 9. The agenda for the Board's June 17, 2025 meeting is publicly available and shows there was a public forum directed to agenda items—labeled as item 2.A.—that preceded the Board members' action on the agenda item regarding the "Superintendent-Removed Books"—labeled as item 44.A. This Court can take judicial notice of this duly adopted local government action.[2] *Watts v. Joggers Run Prop. Owners Ass'n*, 133 F.4th 1032, 1036 n.3 (11th Cir. 2025); *United States v. Howard*, 28 F.4th 180, 186 n.2 (11th Cir. 2022).

Likewise for the "Mass-Removed Books," these were removed at the Board's July 15, 2025 meeting. AB at 9. This meeting also had a public forum for agenda items—again listed as item 2.A.—preceding the Board members' votes on the agenda item regarding "Mass-Removed Books"—listed as item 44.A. This Court

---

[2] The Board's June 17, 2025 meeting agenda is available at: https://go.boarddocs.com/fl/escambia/Board.nsf/vpublic?open, and by navigating to "Meetings" on the top menu, expanding "2025" on the ensuing page by clicking the "+" symbol, and selecting "Jun 17, 2025 (Tue) REGULAR MEETING AGENDA (5:30 PM)" from the drop-down menu.

can also take judicial notice of this action.[3] *Watts*, 133 F.4th at 1036 n.3; *Howard*, 28 F.4th at 186 n.2.

Plaintiffs' efforts to paint the Board members' actions with respect to the so-called "Superintendent-Removed Books" and "Mass Removed Books" as some sort of anomaly—i.e., one taken without the opportunity for public input—rings hollow. Just like with the Board members' decisions on the other books at issue, the public was given the chance to speak on these books before the Board members deliberated and voted. This evidences the legislative character of these actions. *See DeSisto Coll., Inc. v. Line*, 888 F.2d 755, 765 (11th Cir. 1989).

## II.    The Actions Under Scrutiny Are Legislative

Votes by school board members on whether to remove or restrict a library book are legislative decisions. Plaintiffs' efforts to resist this conclusion fall flat.

### A.    Plaintiffs' Reading of Policymaking Is Too Narrow

First, Plaintiffs' insistence on a brittle reading of the term "policymaking" would result in the legislative privilege being applied in only the narrowest of circumstances. But such a blinkered method is improper. This Court has taken a flexible approach to what constitutes policymaking for purposes of legislative

---

[3] The Board's July 15, 2025 meeting agenda is available at: https://go.boarddocs.com/fl/escambia/Board.nsf/vpublic?open, and by navigating to "Meetings" on the top menu, expanding "2025" on the ensuing page by clicking the "+" symbol and selecting "Jul 15, 2025 (Tue) REGULAR MEETING AGENDA (5:30 PM)" from the drop-down menu.

privilege, noting legislative activities "hav[e] a policymaking *function* and general application." *Brown v. Crawford Cnty.*, 960 F.2d 1002, 1011 (11th Cir. 1992) (emphasis added). Indeed, it is that "policy-making power that is the cornerstone of legislative activity." *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1063 (11th Cir. 1992). That no formal policy or rule was announced does not preclude the privilege's application here.

Further, the Escambia County School Board ("Board")—and by extension its members—are clearly entrusted with that policymaking power for the Escambia County School District ("District"), under both Florida's Constitution and its laws. *See* Fla. Const. art. IX, § 4(b); Fla. Stat. § 1001.32(2). This policymaking power includes determining the level of access to the materials within the Board's libraries. *See* Fla. Stat. §§ 1006.28(2)(a), (d).

Viewed through this lens, it is clear the Board members' actions were legislative—in that they carried a policymaking function—given this Court's observation that decisions over the "educational suitability" for books made available in public school libraries "are the perfect example of a core educational policy matter within the exclusive province of local school boards." *Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1225 (11th Cir. 2009) (hereafter "*ACLU*"). Nothing within this Court's precedent confines the term "policymaking" to Plaintiffs' narrow construction, and the Court should

find that is exactly what the Board members engaged in when voting to remove or restrict access to certain books.

Plaintiffs attempt to distinguish this matter from analogous situations like adopting budgets on the grounds that the latter "makes policy about how to expend limited resources that will be applied prospectively." AB at 21. But the same can be said for the Board members' actions with respect to votes on removing or restricting books: they are votes making policy about how to allocate limited resources—i.e., the space on the Board's library shelves—that will be applied prospectively because the votes stand for the foreseeable future and thus guide future decisionmaking. And they have general application because these decisions affect the entirety of the District. In line with this, the Board members' actions fall neatly within the activities classed as legislative vis-à-vis their policymaking function. *See, e.g.*, *Finch v. City of Vernon*, 877 F.2d 1497, 1505 (11th Cir. 1989) ("Local legislators are entitled to absolute immunity from liability for actions taken in furtherance of their official duties. That immunity extends only to actions taken within the sphere of legitimate legislative activity. The district court found that these defendants were entitled to absolute immunity for actions taken in furtherance of their duties as members of the City Council. The district court then concluded that the decision to disband the police department was made in furtherance of their duties as council members. We hold that this conclusion was correct." (citations omitted)).

The act of removing or restricting access to a book is also similar in this sense to abolishing an employment position, which has been held to be an act "embodying a policy decision with prospective implications." *Bryant v. Jones*, 575 F.3d 1281, 1306-07 (11th Cir. 2009). Unlike circumstances where an individual is terminated or not hired—in which case another individual is selected for the role—when a position is abolished another individual is *not* selected and the position is instead removed. This is policymaking because it has "prospective implications that reach well beyond the particular occupant of the office." *Id.* at 1306 (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 56 (1998)). So too here, where by removing or restricting a book—effectively abolishing or permanently altering its status on the library shelves—the Board members' actions have prospective implications because they affect that book's status across the entirety of the District, rather than just having a localized effect. *See Parnell v. Sch. Bd. of Lake Cnty.*, No. 4:23-cv-414-AW-MAF, 2024 WL 5508347, at *2 (N.D. Fla. Sept. 24, 2024) ("It made the book unavailable in all Escambia school libraries and thus to all Escambia students. And it made it unavailable forever—or at least until the Board decides to change its policy.").

Related to the above, Plaintiffs' argument that the Board members' reliance on Chief Judge Winsor's order in *Parnell* "is misplaced," AB at 27 n.9, strains credulity. *Parnell* concerned invocation of legislative privilege by certain Board members over their votes to remove a book. 2024 WL 5508347, at *1-2. The same

here, only on a broader scale concerning more books. Plaintiffs offer no persuasive reasons—nor could they—as to why *Parnell* is not applicable, likely because they simply disagree with Chief Judge Winsor's correct decision that was the opposite of Judge Wetherell's. *See PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 787 F. Supp. 3d 1292, 1297-98 (N.D. Fla. 2024).

Equally specious is Plaintiffs' argument that general application "refer[s] to policies that can have broader application in the future." AB at 38. Plaintiffs cite no caselaw for this proposition, likely because it is incorrect. Indeed, it is difficult to envision how in *Woods v. Gamel*, 132 F.3d 1417 (11th Cir. 1998), the county commissioners' budget decision that affected the local jail "ha[d] widespread *application* (as opposed to impact) beyond the specific facts at issue."[4] AB at 39.

In *Woods*, this Court rejected a similar argument that voting "was no legislative act because it was not an act of general application." 132 F.3d at 1420. As the Court noted, the "act of passing the budget was legislative: policymaking of general application. The county commissioners deliberated and then voted on a

---

[4] Plaintiffs' reliance on *Israel v. DeSantis*, No. 4:19cv576-MW/MAF, 2020 WL 2129450 (N.D. Fla. May 5, 2020), for this claim is tenuous, given that case involved actions by the defendant governor of the State of Florida seeking to remove the plaintiff from office, and another defendant's role as president of the senate overseeing the proceedings. *See id.* at *1. Moreover, as *Israel* acknowledged, the analysis over whether something is legislative or not "is not a rigid and inflexible one," *id.* at *8, which rebuts Plaintiffs' insistence on reading this Court's precedent with an overly critical eye.

budget resolution *for the entire county*, not just the jail." *Id.* (emphasis added). So too here, where the Board members "deliberated and then voted," the effects of which were felt across the entire District, not just individual schools or sites within it. *See id.*

Plaintiffs additionally argue the Board members' votes did not establish a general policy, inferring that individuals are treated differently based on the results of the Board members' votes. AB at 27, 39-40. But that is not true. The Board members' votes applied uniformly, across all schools, to all students in the District. Those books that were removed were removed entirely. Those books that were restricted were only made available to select ages and grades. No exceptions were made for specific individuals. These acts—which had a policymaking function and were of general application—are legislative.

### B.    The Board Members' Actions Were Not Administrative

Plaintiffs attempt to cloak the Board members' actions as administrative largely on the grounds that the Board members were acting pursuant to a statutory mandate. *See* AB at 23-24. But this Court has often found legislative activities that flowed downstream from statutory mandates. *See, e.g.*, *Ellis v. Coffee Cnty. Bd. of Registrars*, 981 F.2d 1185, 1190 (11th Cir. 1993). For example, in *Woods*, the county commissioners were acting pursuant to their "responsibility under Alabama law to pass an annual budget for county expenses." 132 F.3d at 1419. Using Plaintiffs'

approach, this action should have been considered administrative. But this is not the law.

This is because, like with their reading of the term "policymaking," Plaintiffs similarly take too rigid a stance as to what constitutes an "administrative" act. For example, they argue the Board members engaged in "sleight-of-hand" in likening administrative acts with ministerial ones. AB at 36. Plaintiffs' rhetoric aside, the Supreme Court, for example—in discussing common law municipal liability—noted the historical distinction between "'discretionary' or 'legislative' activities," versus those "which were 'ministerial' in nature." *Owen v. City of Independence*, 445 U.S. 622, 644 (1980). Given this, it logically follows that just as discretionary activities are more apt to be legislative, so too then are ministerial ones more apt to be administrative. This Court recognized the similarities between these terms in *Littlejohn v. School Board of Leon County*, 132 F.4th 1232, 1242 (11th Cir. 2025).

Under this framework, the Board members' actions were not administrative or ministerial: the Board members were not bound in how they would vote, nor was the exercise of these votes a mere administrative expression of their powers or duties. These actions therefore "reflected a discretionary, policymaking decision implicating the [educational] priorities of the [Board] and the services the [Board] provides to its constituents." *Bogan*, 523 U.S. at 55-56. Plaintiffs insist the existence

10

of discretion in these votes is "irrelevant." AB at 31. But *Bogan* shows this is incorrect.

This is supported by the fact courts have often described legislative acts as having a discretionary nature in other contexts. *See Harris v. District of Columbia*, 256 U.S. 650, 652 (1921) ("It is established doctrine that when acting in good faith municipal corporations are not liable for the manner in which they exercise discretionary powers of a public or legislative character."); *City of Green Cove Springs v. Donaldson*, 348 F.2d 197, 200 (5th Cir. 1965)[5] ("[W]hether to employ additional police personnel is equally a matter of judgment, calling for the exercise of legislative or quasi-legislative discretion, and the city is immune from negligence liability for injuries resulting from that decision."). Plaintiffs have no convincing rebuttal to the Court's statement in *Bogan* discussing how this discretionary act— which implicated the entity's priorities and were part of its services to its constituents—was an act of policymaking, just as the votes here were.

C.　Plaintiffs Overly Rely on *Crymes*

Plaintiffs declare this Court's opinion in *Crymes v. DeKalb County*, 923 F.2d 1482 (11th Cir. 1991), as "certainly sound[ing] like a dispositive test." AB at 35; *see*

---

[5] Decisions of the former Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

*also id.* at 33-34. To begin, the Board members have never argued *Crymes* is bad law, as Plaintiffs suggest. *Id.* at 35. And, in fact, it supports a finding of legislative privilege here. IB at 25-34.

Further, as this Court has noted, "[w]e cannot read a court's opinion like we would read words in a statute." *Nealy v. Warner Chappell Music, Inc.*, 60 F.4th 1325, 1332 (11th Cir. 2023) (citations omitted); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979) ("[T]he language of an opinion is not always to be parsed as though we were dealing with language of a statute."). "Instead, when interpreting and applying words in a judicial opinion, we must consider the context, such as the question the court was answering, the parties' arguments, and facts of the case." *Nealy*, 60 F.4th at 1332 (citation omitted).

Looking then to *Crymes*, a few features stand out. First, it was a land use matter, an odd fit for this case. *Cf.* 923 F.2d at 1483-84 (recounting factual background for *Crymes*). Second, in *Crymes* the non-legislative action was the decision to uphold the denial of a development permit. *Id.* at 1486. This too is ill-fitting for the Board members' actions here, which were policy decisions of broad-ranging application affecting the whole District, rather than just specific individuals. In this sense, by voting to remove or restrict these books, the Board members were effectively imposing moratoriums on them, which this Court has noted is a legislative act. *See Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1392 (11th Cir.

1993). And third, even this Court has not rigidly demanded only those actions which create policy are legislative, as Plaintiffs argue. AB at 33. Rather, it is whether it has a "policymaking *function* and general application." *Brown*, 960 F.2d at 1011 (emphasis added).

Taking this holistic approach, *Crymes* merely elucidates what even Plaintiffs admit "are just guideposts." AB at 20. Courts should thus consider the "guideposts" established in the caselaw akin to a how to guide in determining whether an act is legislative or not. And, as the Board members' briefing highlights, these guideposts point towards application of the privilege here. *See, e.g.*, IB at 16-24.

This is supported by the constellation of authority that surrounds (and often preceded) *Crymes* and establishes factors to discern whether actions are legislative or not. These cases are entitled to equal weight as what Plaintiffs advance is the supposed dispositive standard established by *Crymes*.[6] *Cf. Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*, 59 F.4th 1158, 1164 (11th Cir. 2023) ("From the earliest days of our Circuit's existence, we have followed what has come to be known as the prior-precedent rule.").

---

[6] And any standard created by *Crymes* must align with the standards articulated in this Court's earlier precedent; to the extent *Crymes* contradicts those earlier precedents, it must yield. *Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003) (noting "intra-circuit split[s]" are resolved by "look[ing] to the line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel" (citation omitted)).

Plaintiffs on the one hand acknowledge these factors are, like those in *Crymes*, "guideposts" for reaching a decision as to whether an act is legislative or not, AB at 34, yet urge this Court to disregard them nonetheless. But Plaintiffs cannot overlook the applicable caselaw or castigate statements by this Court and the Supreme Court as "poorly reasoned and incorrect" simply because they cut against their position. *Id.* at 29.

Despite fitting within the legislative framework, Plaintiffs argue the Board members fail to identify "any policy of general application that resulted from the votes." AB at 27. But this is incorrect. The policymaking function is obvious: that these books are not fit for some, or all, of the students of the District, in line with the Board members' constitutional and statutory powers and duties. *See Parnell*, 2024 WL 5508347, at *2 ("It was a quintessential policy decision about how best to educate Escambia County children."); *cf. ACLU*, 557 F.3d at 1227 (rejecting argument "that federal courts may substitute their own findings and opinions about educational suitability for those of a school board whenever the board's motive for an action is questioned").

Plaintiffs' overemphasis on the strict text of *Crymes* thus reflects their misunderstanding of this Court's precedent. Indeed, the standard in *Crymes* was drawn from *Minton v. St. Bernard Parish School Board*, 803 F.2d 129, 135 (5th Cir. 1986), which merely commented in dicta that, on remand, if the school board

14

members sought immunity, then the district court must examine whether the school board members' decisions "involve[d] the degree of discretion and public-policy-making traditionally associated with legislative functions or merely an administrative application of existing policies."

Thus, even the progenitor of *Crymes* recognized that discretion was a key factor in determining the legislative character of an act. This contrasts Plaintiffs' claim that discretion is "irrelevant," AB at 31, and that this standard and the other factors drawn from the caselaw represent a mere "hodgepodge." AB at 29. The Board members were not administratively applying their policy; they were instead effecting a policymaking function through actions merely guided by policy. The distinction between these is key: had the Board members been bound in their votes or otherwise unable to create distinctions between different books, that would be an administrative act. But that is not what happened here: the Board members engaged in line-drawing by determining which books students in the District should have access to, which is a policymaking function of general application. *Yeldell*, 956 F.2d at 1062-63.

Plaintiffs incorrectly argue the Board members place "undue weight" on this Court's use of the term "line-drawing." AB at 32. But in *Yeldell*, this Court explicitly equated "policy-making decision[s] of a general scope" with "line-drawing" when discussing legislative acts. 956 F.2d at 1062 (quoting *Ryan v. Burlington Cnty.*, 889

15

F.2d 1286, 1290-91 (3d Cir. 1989)). As with so many of this Court's other decisions, Plaintiffs seek to minimize the importance of what governs the determination of legislative acts. Taken to its end, Plaintiffs would effectively write the legislative privilege out of existence. Given the importance this Court has placed on the legislative privilege, *see In re Hubbard*, 803 F.3d 1298, 1307 (11th Cir. 2015), this Court should reject such efforts.

### D.    Plaintiffs Misapprehend *Ellis*

Finally, Plaintiffs accuse the Board members of misunderstanding *Ellis*. AB at 40-45. Plaintiffs somewhat inexplicably also accuse Judge Wetherell of being "mistaken" that his decision is hard to square with *Ellis*. *Id.* at 43. Regardless, Plaintiffs assert the key to understanding this case is that it involved "the legislative function of conducting an *investigation*, as opposed to legislating." *Id.* at 41. But Plaintiffs' hair splitting is illogical because to say investigating is a legislative "function" but somehow stands apart from "legislating"—or does not describe the Board members' actions here—would create subclasses of legislative acts with some apparently afforded more weight than others. Even more so given Plaintiffs' efforts to cast *Ellis* as some sort of judicial aberration. *See id.* at 43.

The proper scope through which the case is viewed is that the Board members—like the *Ellis* county commissioners—pursued a statutory mandate by employing their discretionary authority, that is, reviewing any challenged books in

16

its libraries, and providing ultimate determinations as to whether these books ran afoul of the law. Fla. Stat. § 1006.28(2)(a)1.-2. Just as the county commissioners in *Ellis* employed their investigatory power, 981 F.2d at 1187-89, the Board members employed their authority to review the suitability of books in its libraries. Fla. Stat. § 1006.28(2)(a)1.-2. The Board members' votes are therefore quintessentially legislative acts. *Ellis*, 9891 F.2d at 1190.

Plaintiffs also attempt to diminish *Ellis*' vitality by arguing it is inapposite and pointing to the purported amount of times it has been cited. AB at 43 & n.17. But to borrow Plaintiffs' language: "[*Ellis*] is perfectly good law that is binding on this Court." *Id.* at 35. That it does not support their position does not change this. The Board members were acting in their legislative capacity when voting to remove or restrict library books. The district court's decision to the contrary was an abuse of discretion and should be reversed.

17

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

The undersigned certify that this Brief complies with the type-volume limitations set forth in Federal Rule of Appellate Procedure 32(a)(7)(A) and Eleventh Circuit Rule 32-4 because it contains 4,024 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4.

The undersigned further certify that this Brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface of Times New Roman 14-point font.

s/ Jeffrey J. Grosholz
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

and

18

SAMANTHA DUKE
Florida Bar No. 0091403
Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133

Attorneys for Appellants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 23, 2026, I electronically filed the foregoing Brief by using the Eleventh Circuit Court ECF system which will send via e-mail a Notice of Docket Activity to the following: **Kristy L. Parker at kristy.parker@protectdemocracy.org; Shalini Goel Agarwal at shalini.agarwal@protectdemocracy.org; Kirsten Elizabeth Fehlan at fehlank@ballardspahr.com; Lynn Beth Oberlander at oberlanderl@ballardspahr.com; Paul Joseph Safier at safierp@ballardspahr.com; Ori Lev at ori.lev@protectdemocracy.org; Goldie Fields at fieldsg@ballardspahr.com; Facundo Bouzat at bouzatf@ballardspahr.com; Matthew Kussmaul at kussmaulm@ballardspahr.com; Michael McDonald at mcdonaldm@ballardspahr.com; and Taylor Washburn at washburnt@ballardspahr.com (Counsel for Plaintiffs) and David A. Karp at dkarp@caroltonfiled.com and Christopher J. Norris at cnorris@caroltonfields.com (Counsel for Florida Center for Government Accountability, Inc.)**.

s/ Jeffrey J. Grosholz
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH

20

Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

and

SAMANTHA DUKE
Florida Bar No. 0091403
Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133

Attorneys for Appellants

21