CASE NO. 25-13298-E, 25-13698-E

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Pen American Center Inc., et al.,

Plaintiffs-Appellees,

*v.*

Kevin Adams, et al.,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Florida
Case No. 3:23-cv-10385-TKW-ZCB

## AMICUS BRIEF OF THE FLORIDA CENTER FOR GOVERNMENT ACCOUNTABILITY SUPPORTING AFFIRMANCE

David A. Karp
Christopher J. Norris
**CARLTON FIELDS, P.A.**
2 MiamiCentral
700 N.W. First AvenueSuite 1200
Miami, Florida 33136-4118
(305) 539-7280

*Attorneys for Amicus Curiae Florida Center for Government Accountability*

*Pen American Center, Inc., et al. v. Kevin Adams, et al.*
Case No. 25-13298-E, 25-13698-E

## <u>CERTIFICATE OF INTERESTED PERSON</u>

Amicus Curiae Florida Center for Government Accountability certify under Fed. R. App. P. 26.1 and 11th Cir. L.R. 26.1-1 that the following persons or entities may have an interest in the outcome of this litigation:

1.     **Adams, Kevin** (Appellant)

2.     **Agarwal, Shalini Goel** (attorney for Appellees)

3.     **Ballard Spahr LLP** (attorneys for Appellees)

4.     **Baer, Nicholas Eli** (attorney for Amici Florida State Conference NAACP and Equality Florida Action, Inc.)

5.     **Bell, Daniel William** (attorney for Amicus State of Florida)

6.     **Bergosh, Carissa** (Appellant)

7.     **Bertelsmann Management SE** (General Partner and Manager of Bertelsmann SE & Co. KGaA)

8.     **Bertelsmann SE & Co. KGaA.** (Parent Corporation of Penguin Random House LLP)

9.     **Bertelsmann Stiftung** (Shareholder of Bertelsmann SE & Co. KGaA)

10.    **Bertelsmann Verwaltungsgesellschaft (BVG)** (Shareholder of Bertelsmann SE & Co. KGaA)

11.    **Bolitho, The Honorable Zachary C.** (United States Magistrate Judge)

12. **Bouzat, Facundo** (attorney for Appellees)

13. **Bowles, Amy** (attorney for Appellees)

14. **Boyd, Kamera Ella** (former attorney for Appellees)

15. **Brannen, Sarah** (former Plaintiff)

16. **Buschel, Robert C.** (attorney for Amici Florida State Conference NAACP and Equality Florida Action, Inc.)

17. **Buschel Gibbons, P.A.** (law firm for Amici Florida State Conference NAACP and Equality Florida Action, Inc.)

18. **BVG-Stiftung** (Shareholder of Bertelsmann SE & Co. KGaA.)

19. **Calvert, Clay** (Amicus)

20. **Compton, Kyle** (Amicus)

21. **Corbin, Caroline Mala** (Amicus)

22. **Costello, David Matthew** (attorney for Amicus State of Florida)

23. **Covington & Burling LLP** (law firm for Amici Florida State Conference NAACP and Equality Florida Action, Inc.)

24. **Duke, Samantha Crawford** (attorney for Appellants)

25. **Durtschi, Lindsay** (former Plaintiff)

26. **Easton, Eric B.** (Amicus)

27. **Ekstrand, Victoria Smith** (Amicus)

28.    **Epstein, Michael M.** (Amicus)

29.    **Equality Florida Action** (Amicus)

30.    **Escambia County School Board** (Appellant-Defendant)

31.    **Escambia County School District** (former Defendant)

32.    **Fehlan, Kirsten Elizabeth** (attorney for Appellees)

33.    **Fetsko, Paul** (Appellant)

34.    **Fields, Goldie Felice** (attorney for Appellees)

35.    **Florida State Conference NAACP** (Amicus)

36.    **Florida Center for Governmental Accountability** (Amicus)

37.    **Fugate, Rachel Elise** (attorney for Amicus Calvert and Individual Amici)

38.    **Glass, Benjamin** (Appellee)

39.    **Grosholz, Jeffrey J.** (attorney for Appellants)

40.    **Hans, G.S.** (Amicus)

41.    **Harrell, Tom** (Appellant)

42.    **Hein, Jayni Foley** (attorney for Amici Florida State Conference NAACP

and Equality Florida Action, Inc.)

43.    **Hightower, Patty** (Appellee)

44.    **Johnson, George M.** (Appellee)

45. **Karp, David A.** (attorney for Amicus Florida Center for Governmental Accountability)

46. **Kitrosser, Heidi** (Amicus)

47. **Kussmaul, Matthew Gerard** (attorney for Appellees)

48. **Langford, Johns Thomas** (attorney for Appellees)

49. **Lev, Ori** (attorney for Appellees)

50. **Levithan, David** (former Plaintiff)

51. **Lidsky, Lyrissa** (Amicus)

52. **Ludington, Sarah** (Amicus)

53. **Lukoff, Kyle** (Appellee)

54. **Magarian, Gregory P.** (Amicus)

55. **Marceau, Justin** (Amicus)

56. **Marsey, John David** (attorney for Appellants)

57. **Martin, C. Amanda** (Amicus)

58. **McDonald, Michael** (attorney for Appellees)

59. **The Mohn Family** (Shareholder of Bertelsmann SE & Co. KGaA.)

60. **Niehoff, Len** (Amicus)

61. **Novakowski, Ann** (Appellee)

62. **Oberlander, Lynn Beth** (attorney for Appellees)

63.    **Parker, Kristy L.** (attorney for Appellees)

64.    **Parker, Sean** (Appellee)

65.    **Patrow, Kristin A.** (Amicus)

66.    **Peltz-Steele, Richard J.** (Amicus)

67.    **PEN American Center, Inc.** (Appellee)

68.    **Penguin Random House LLC** (Appellee)

69.    **Perez, Ashley Hope** (Appellee)

70.    **Phillips, Clarence William** (Counsel for Amici Florida State Conference

       NAACP and Equality Florida Action, Inc.)

71.    **Piety, Tamara** (Amicus)

72.    **Protect Democracy Project** (attorneys for Appellees)

73.    **Reinhard Mohn Stiftung** (Shareholder of Bertelsmann SE & Co., KGaA.)

74.    **Roy, Erica** (former Plaintiff)

75.    **Rumberger, Kirk & Caldwell, P.A.** (attorneys for Appellants)

76.    **Safier, Paul Joseph** (attorney for Appellees)

77.    **Safstrom, Jennifer** (Amicus)

78.    **Satterwhite, Christopher Scott** (Appellee)

79.    **Schwartzmann, Katie M.** (Amicus)

80.    **Seager, Susan E.** (Amicus)

81.     **Shapiro, Lena** (Amicus)

82.     **Slayton, William** (Appellant)

83.     **Smith, Carin** (former Plaintiff, on behalf of herself and her minor children)

84.     **Smith, Nicole Sieb** (attorney for Appellants)

85.     **State of Florida** (Amicus)

86.     **Summers, Shawn F.** (former attorney for Plaintiffs)

87.     **Ugland, Erik** (Amicus)

88.     **Warren, Catherine Jane** (attorney for Appellees)

89.     **Washburn, Taylor** (attorney for Appellees)

90.     **Wetherell II, The Honorable Kent T.** (United States District Court Judge)

91.     **Whitaker, Henry Charles** (attorney for Amicus State of Florida)

92.     **Williams, David** (Appellant)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Amicus Curiae Florida Center for Governmental Accountability states under Federal Rule of Appellate Procedure 9(a)(4)(A) and 26.1, and 11th Circuit Rule 26.1-3 that it is a non-profit corporation, has no parent corporation, and does not issue shares of stock.

/s/ David A. Karp
David A. Karp
Florida Bar No. 69226

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .................................................................................... vii

TABLE OF AUTHORITIES ............................................................................ viii

INTEREST OF AMICUS CURIAE .....................................................................1

STATEMENT OF THE ISSUES...........................................................................1

SUMMARY OF ARGUMENT .............................................................................2

ARGUMENT ........................................................................................................4

I.      Florida's commitment to government transparency is unlike most
        states and the federal government, and informs the limited nature of
        the legislative privilege for Florida government officials .............................4

II.     *Pernell* did not consider whether the Florida legislative privilege
        should apply to Florida officials...................................................................6

III.    Federal courts apply state privilege law in federal question cases
        where, as here, the state interest in the privilege is strong and the
        federal interest is weak. ..............................................................................11

CONCLUSION .....................................................................................................18

CERTIFICATE OF COMPLIANCE ....................................................................19

CERTIFICATE OF SERVICE ..............................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Civil Liberties Union of Mississippi, Inc. v. Finch*,
    638 F.2d 1336 (5th Cir. 1981) ................................................................3, 11, 17

*Brem v. DeCarlo, Lyon, Hearn & Pazourek, P.A.*,
    162 F.R.D. 94 (D. Md. 1995) ......................................................................14

*Brown v. Electrolux Home Products, Inc.*,
    817 F.3d 1225 (11th Cir. 2016) ....................................................................9

*Doe No. 1 v. United States*,
    749 F.3d 999 (11th Cir. 2014) ....................................................................18

*Doe v. St Joseph's Hospital of Fort Wayne*,
    No. CIV. A. F83-201, 1987 WL 15462 (N.D. Ind. Apr. 18, 1987)....................14

*Everglades Law Center, Inc. v. South Florida Water Management District*,
    290 So. 3d 123 (Fla. 4th DCA 2019)..............................................................5

*Finch v. Seminole County School Board*,
    995 So. 2d 1068 (Fla. 5th DCA 2008)..............................................................5

*Forsberg v. Housing Authority of City of Miami Beach*,
    455 So. 2d 373 (Fla. 1984) ............................................................................4

*Girardeau v. State*,
    403 So. 2d 513. (Fla. 1st DCA 1981) ............................................................15

*Globe Newspaper Co. v. Superior Court for Norfolk County*,
    457 U.S. 596 (1982)........................................................................................7

*Gulf Power Co. v. Federal Communications Commission*,
    226 F.3d 1220 (11th Cir. 2000) ....................................................................10

*In re Hampers*,
    651 F.2d 19 (1st Cir. 1981)............................................................................13

*Hugley v. Art Institute of Chicago*,
    981 F. Supp. 1123 (N.D. Ill. 1997)................................................................14

*Komlosi v. New Tork State Office of Mental Retardation &*
*Development Disabilities*,
No. 88 CIV. 1792 (JFK), 1992 WL 77544 (S.D.N.Y. Apr. 3, 1992)................14

*League of Women Voters of Florida v. Florida House of Representatives*,
132 So. 3d 135 (Fla. 2013) .............................................................3, 6, 7, 8, 9

*Marek v. Singletary*,
62 F.3d 1295 (11th Cir.1995) ....................................................................9

*McGinnis v. Ingram Equipment Co.*,
918 F.2d 1491 (11th Cir. 1990) ..................................................................9

*Memorial Hospital for McHenry County v. Shadur*,
664 F.2d 1058 (7th Cir. 1981) ...................................................................14

*New State Ice Co. v. Liebmann*,
285 U.S. 262 (1932) (Brandeis, J., dissenting)........................................15

*Odmark v. Westside Bancorporation, Inc.*,
636 F. Supp. 552 (W.D. Wash. 1986) ......................................................12

*Pernell v. Florida Board of Governors of State University*,
84 F.4th 1339 (11th Cir. 2023) ......................................................2, 3, 6, 7, 8

*Trammel v. United States*,
445 U.S. 40 (1980)......................................................................................17

*United States v. Brown*,
364 F.3d 1266 (11th Cir. 2004) .................................................................12

*United States v. Gillock*,
445 U.S. 360 (1980)......................................................................................8

*Wood v. Marston*,
442 So. 2d 934 (Fla. 1983) ..........................................................................5

*Young v. United States*,
149 F.R.D. 199 (S.D. Cal. 1993) ...............................................................11

**Constitutional Provisions**

Florida Constitution, Article I, Section 24 (b)........................................................5

United States Constitution, Article I, Section 5 .....................................................7

United States Constitution, Article I, Section 6......................................................7

**Rules**

Federal Rule of Appellate Procedure 29(4)(E)......................................................19

Federal Rule of Evidence 501.................................................................11, 13, 16

**Other Authorities**

Appellee's Response Brief, *Pernell v. Florida Board of Governors of State University*, 84 F.4th 1339 (11th Cir. 2023) (No. 23-10616), 2023 WL 3693398 ...............................................................................................9

Appellant's Reply Brief, *Pernell v. Florida Board of Governors of State University*, 84 F.4th 1339 (11th Cir. 2023) (No. 23-10616), 2023 WL 4312082 ...............................................................................................9

*Pennsylvania's Sunshine Law": Problems or Construction and Enforcement*, 124 U. Pa. L. Rev. 536 (1975).............................................................................7

J. Pierce Lamberson*, Drawing the Line on Legislative Privilege: Interpreting State Speech or Debate Clauses in Redistricting Litigation*, 95 Wash. U.L. Rev. 203 (2017) ...............................................................................................16

Judge William Pryor*, For the Defense with David Oscar Markus* (July 20, 2023) https://podcasts.apple.com/gb/podcast/judge-william-pryor/id1536699 806?i=1000529450663 ...............................................................................11

*The Government-in-the-Sunshine Law Then and Now: A Model for Implementing New Technologies Consistent with Florida's Position As A Leader in Open Government*, 35 Fla. St. U. L. Rev. 245 (2008)....................................................4

**INTEREST OF AMICUS CURIAE**

The Florida Center for Government Accountability (the "Center") is a non-partisan, non-profit organization dedicated to ensuring government accountability through investigative journalism and enforcement of Florida's public records and open government laws. The Center helps Floridians obtain public records from local and state government and ensure transparency in government decision-making. The Center also helps journalists who need access to government information and will litigate on behalf of citizens wrongfully denied access to government information.

The Center has an interest in the outcome of this case based on its work and commitment to ensuring transparency in local and state government in Florida.

The argument in the amicus brief will contribute to the Court's consideration of this case because it addresses an issue the Court will face if it reverses the decision below and remands the case to the district court to further consider whether the legislative privilege applies in this circumstance.

**STATEMENT OF THE ISSUES**

The Center adopts the Appellees' statement of the issues.[1]

---

[1]     Citations in this brief omit internal quotations and citations unless included.

<h1 style="text-align:center">SUMMARY OF ARGUMENT</h1>

The Court should affirm the decision below and hold that the legislative privilege does not protect Escambia School Board members from discovery into their administrative decisions to remove certain books from public school libraries. The district court correctly held that the legislative privilege only applies to legislative, not administrative, acts. But if this Court disagrees and holds that the School Board members acted in a legislative capacity by removing books from libraries, the Court should not automatically reach the issue of whether Florida's legislative privilege applies in this case.

Instead, the Court should remand the issue back to the district court to reconsider the scope of the legislative privilege by applying Florida law governing legislative privilege rather than federal common law as set out in *Pernell v. Florida Board of Governors of State University*, 84 F.4th 1339 (11th Cir. 2023). Although federal common law regularly governs the applicability of a privilege in federal court in a federal question case, the exception to that general rule should apply here.

The legislative privilege exists primarily to protect the state and its government officials, not federal office holders or private citizens seeking relief in federal court. The state's own conception of the scope and limits of that privilege in Florida's unique constitutional structure, as applied to its officials, should govern in federal court as it does in state court. Respect for federalism and the unique open

2

government provisions of the Florida Constitution weigh heavily in favor of applying the state's understanding of its own legislative privilege, rather than impose on Florida the unqualified and broader federal common law, developed for state and federal governments that do not share Florida's remarkable constitutional commitment to decision-making in the sunshine. Applying the Florida legislative privilege out of comity to the state "can [also] be accomplished at no substantial cost to federal substantive and procedural policy." *Am. C.L. Union of Miss., Inc. v. Finch*, 638 F.2d 1336, 1343 (5th Cir. 1981). The federal interest in a legislative privilege applied to Escambia School Board members or other Florida officials is weak, while the state interest in its own sovereignty and self-governance is strong.

The competing interpretations of the legislative privilege by this Court and the Florida Supreme Court would likely produce different results in this case and others. In *Pernell*, this Court held that the federal common law legislative privilege is nearly "[u]nqualified." 84 F.4th at 1344. By contrast, in *League of Women Voters of Florida v. Florida House of Representatives*, 132 So. 3d 135 (Fla. 2013), the Florida Supreme Court held that the privilege is "not absolute, particularly where another compelling, competing interest is at stake." *Id.* at 146. The Florida Supreme Court reached this decision based in part on the Florida Constitution's singular commitment to public, not private, deliberations of government decisions and open government. This Court should respect that judgment in cases, like this, by

3

recognizing that Florida's legislative privilege, not the federal common law privilege, applies to the School Board members in this case.

## ARGUMENT

**I. Florida's commitment to government transparency is unlike most states and the federal government, and informs the limited nature of the legislative privilege for Florida government officials.**

For decades, "Florida has been in the forefront of promoting open government" through its Government-in-the-Sunshine and public record laws. *Forsberg v. Hous. Auth. of City of Mia. Beach*, 455 So. 2d 373, 378 (Fla. 1984) (Overton, J., concurring). In the 1970s, Florida "gained a national reputation as [having] one of the strongest and most effective open meetings laws, prompting other states to pattern their laws after the Florida law." Sandra F. Chance & Christina Locke, *The Government-in-the-Sunshine Law Then and Now: A Model for Implementing New Technologies Consistent with Florida's Position As A Leader in Open Government*, 35 Fla. St. U. L. Rev. 245, 258 (2008). The *New York Times* noted in 1975 that Florida "set the pace" for other states in ensuring government transparency. *Id.*

When the state government began chipping away at open government laws, Floridians voted overwhelmingly to enshrine the right to government transparency in the Florida Constitution. *Id.* at 257. "The constitutional amendment 'elevated the public's right to government in the sunshine to constitutional proportions.'"

*Everglades L. Ctr., Inc. v. S. Fla. Water Mgmt. Dist.*, 290 So. 3d 123, 127 (Fla. 4th DCA 2019) (quoting *Zorc v. City of Vero Beach*, 722 So. 2d 891, 896 (Fla. 4th DCA 1998)). Article I, section 24(b) of the Declaration of Rights of the Florida Constitution required that "[a]ll meetings of any collegial public body of . . . a county, municipality, school district, or special district, at which official acts are to be taken or at which public business of such body is to be transacted or discussed, shall be open and noticed to the public[.]" The related Government-in-the-Sunshine Act requires that government officials, including School Board members, discuss and deliberate government decisions in the open to "protect the public from 'closed door' politics." *Wood v. Marston*, 442 So. 2d 934, 938 (Fla. 1983). Florida law, for example, forbids two School Board members or other local government board members from speaking privately about a government issue likely to come before them. *See, e.g., Finch v. Seminole Cnty. Sch. Bd.*, 995 So. 2d 1068, 1072-73 (Fla. 5th DCA 2008) (school board members violated Sunshine Law by attending a private bus tour while considering rezoning plans, though the members sat apart from each other, and did not express opinions or vote). All deliberations between elected officials must occur before the public – a radical departure from how the federal government and most states conduct business.

When the Florida Supreme Court first held in 2013 that the Constitution's structure and separation of powers created a legislative privilege in Florida, it

5

"emphasize[d] that the legislative privilege is not absolute." *League of Women Voters of Fla.*, 132 So. 3d at 146. The privilege could yield to the public interest, particularly where "there may be a compelling, competing interest in a particular case that outweighs the purposes underlying the privilege." *Id.* at 147. The Supreme Court explained that "[t]his public interest component is especially true in Florida, where one of our state constitutional values is a strong and well-established public policy of transparency and public access to the legislative process, which is enshrined in the Florida Constitution." *Id.* at 146. The Court also noted that Florida, unlike 48 other states and the federal constitution, contained no Speech and Debate Clause, the traditional "justification that the federal courts and other states with a state-specific clause have utilized in recognizing the legislative privilege." *Id.* at 143.

In *League of Women Voters of Florida*, the Florida Supreme Court held that the limited legislative privilege gave way to the competing interest of ensuring compliance with a different state constitution provision governing reapportionment. *Id.* at 147. But it did not limit the other "compelling, competing interests" to enforcing the state reapportionment clause. *Id.* The Supreme Court explained that the legislative privilege did not create "a bright line," but instead "involves a balancing of interests as specific questions are posed." *Id.* at 151.

**II.**     *Pernell* **did not consider whether the Florida legislative privilege should apply to Florida officials.**

Florida's legislative privilege rests on a considerably different foundation than

6

the federal common law legislative privilege. The Florida Constitution creates a basic right to open government in the same declaration as other fundamental rights, including religious freedom, freedom of speech, the right to bear arms, and due process. *See* Fla. Const. Florida law also provides some of the strongest protection for government transparency in the nation. And unlike the U.S. Constitution and all other states but one, the Florida Constitution does not contain the clause that traditionally supports the legislative privilege. *See* U.S. Const. art. I, § 6,; *League of Women Voters of Fla.*, 132 So. 3d at 143. By contrast, the U.S. Constitution permits each house of Congress to meet in secret and keep a journal of their proceedings secret. *See* U.S. Const. art. I, § 5. Each house of Congress must only record votes in a public journal "at the Desire of one fifth of those Present." *Id.* And while the U.S. Supreme Court has recognized a right for the public and press to attend criminal trials, *see Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 610 (1982), the constitutional and statutory rights to transparency in the federal government is far more limited than in Florida and many other states.[2]

In *Pernell*, this Court considered only "whether a *common-law* privilege

---

[2]     *See, e.g., Pennsylvania's "Sunshine Law": Problems or Construction and Enforcement*, 124 U. Pa. L. Rev. 536, 546, 546 n.74 (1975) (describing how Pennsylvania legislators described Florida's open government laws as excessive because supposedly "[t]wo fellows could not drive to work together [in Florida] and discuss the business of the day without being subject to arrest").

shields state legislators from a discovery request made for the purpose of determining the legislators' motives in passing a law." 84 F.4th at 1341 (emphasis added). The Court did not cite, much less discuss, the Florida Supreme Court's decision in *League of Women Voters of Florida*. The Court also did not examine Florida's unique constitutional commitment to open government. Instead, the Court relied on federal court decisions applying the legislative privilege against federal interests in states that do not share Florida's constitutional requirement of open government. *Pernell* analyzed the U.S. Supreme Court's decision in *United States v. Gillock*, 445 U.S. 360, 373 (1980), which considered whether the common-law legislative privilege as applied to a Tennessee legislator barred evidence of legislative acts in a federal criminal prosecution in federal court. *Gillock*, 445 U.S. at 361-62. *Gillock* held that the legislative privilege did not outweigh the federal interest in prosecuting a state legislator for federal crimes. *Id.* at 373. No similar federal interest exists in this case. Similarly, *Pernell* canvassed cases from sister circuits considering the legislative privilege in different constitutional settings than Florida's, without regard to the distinctiveness of Florida's legislative privilege. *See* 84 F.4th at 1345.

Pernell* evidently assumed, without deciding, that the federal common law legislative privilege, rather than Florida's legislative privilege, applied to the issues in that case, a challenge to the Florida Individual Freedom Act, also known as the

Stop W.O.K.E. Act. *Id.* at 1341. In *Pernell,* the appellees challenging the legislative privilege only cited *League of Women Voters of Florida* once, in a footnote, to mention that Florida "did not foresee the need to provide a robust legislative privilege." Appellees' Resp. Br., *id.* (No. 23-10616), 2023 WL 3693398, at *35. In its reply brief, the state also mentioned *League of Women Voters of Florida* once to argue that the case said "nothing about federal law," adding that "the Florida Constitution is relevant only because it provides for the kind of 'part-time citizen legislat[ure]" that the U.S. Supreme Court held the legislative privilege exists to protect. Appellant's Reply Br., *id.* (No. 23-10616), 2023 WL 4312082, at *21. Neither of the parties argued that the state legislative privilege, rather than the federal common law privilege, applied.

Because no party raised the issue that the Amicus raises here, *Pernell* did not decide the underlying legislative privilege question in this case, and appears to assume, without deciding, that federal common law governed. But "assumptions are not holdings." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016). "A general principle of appellate review is that an appellate court will not consider issues not presented to the trial court," *McGinnis v. Ingram Equip. Co.*, 918 F.2d 1491, 1495 (11th Cir. 1990), and "[i]ssues not clearly raised in the briefs are considered abandoned," *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir.1995). Therefore, *Pernell* does not control the outcome of the application of the

9

legislative privilege here – if the Court first finds that the Escambia School Board members even acted in a legislative capacity (which they did not).

If the Court does not consider *Pernell* distinguishable, then it should reconsider *Pernell* en banc at the right time in the right case. En banc review is particularly appropriate because the parties here did not brief this threshold issue. In addition, the three-judge panel in *Pernell* consisted of two active circuit judges of this Court, evenly divided. *Pernell*, 84 F.4th at 1340. Chief Judge William Pryor wrote the Court's majority opinion, and Circuit Judge Jill Pryor wrote a sweeping dissent. A visiting district judge from Alabama cast the deciding vote. *Id.* Thus, *Pernell* represents the opinion of a single active circuit judge of this Court.[3]

---

[3] Judges on the Court have occasionally discussed their conviction that the Circuit's active judges, rather than visiting judges, should decide the Court's binding precedents. *See, e.g., Gulf Power Co. v. Fed. Commc'n Comm'n*, 226 F.3d 1220, 1223 (11th Cir. 2000) (Carnes, J., concurring) (expressing dissatisfaction that "issues of [en banc] exceptional importance [were] decided not by a majority of the judges in active service on this Court but instead solely by one active judge of this Court joined by a senior judge from another court" or panels of two visiting judges).

In an interview, Chief Judge William Pryor commented on the use of visiting judges to hear oral argument cases, among the Court's "more difficult" appeals:

> [O]ne of the things we've done in the 20 percent of the appeals that we have in oral argument, as you well know, is invite judges from other circuits to sit with us and help us with our work. Well, we've stopped doing that. . . . I think the very broad consensus of our court is that's not the best way of doing business . . . I think for the most part, we think that we're much better when we're doing our own work. And we have colleagues who understand our precedent. They've developed it. They understand it. They know it. They understand, too, how their colleagues

**III. Federal courts apply state privilege law in federal question cases where, as here, the state interest in the privilege is strong and the federal interest is weak.**

In the usual federal question case, federal courts apply the federal common law to claims of privilege unless a federal statute, a federal rule, or the federal Constitution controls. Federal Rule of Evidence 501 instructs federal courts to apply the common law in federal question cases and state law in diversity cases. But this division is not absolute, and Rule 501 provides that courts should interpret the common law "in the light of reason and experience." In the exceptional and rare case, where a state's interest in a privilege far outweighs the federal interest, federal courts apply state privilege law even in federal question cases. (Courts often characterize applying state privilege law as "absorbing state law as the federal law," *see Young v. United States*, 149 F.R.D. 199, 204 (S.D. Cal. 1993), but, however characterized, the federal courts in these cases essentially apply state privilege law.)

In *Finch*, 638 F.2d 1336, a decision issued on March 13, 1981, and considered binding precedent in this court,[4] the Fifth Circuit wrote "that 'a strong policy of

---

will react to certain ways of making decisions. . . . And we just ought to be managing our work. But we're doing that now.

Judge William Pryor, *For the Defense with David Oscar Markus*, at 1:02:30 to 1:06:40, (July 20, 2023), https://podcasts.apple.com/gb/podcast/judge-william-pryor/id1536699 806?i=1000529450663

[4] "Decisions of the Fifth Circuit rendered on or before September 30, 1981, are binding precedent in the Eleventh Circuit." *United States v. Brown*, 364 F.3d 1266,

comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *Id.* at 1343 (quoting *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y. 1976)); *see also Odmark v. Westside Bancorporation, Inc.*, 636 F. Supp. 552, 554 (W.D. Wash. 1986) (noting that in cases "predicated on federal law, embodying federal policies, enforcement of those policies demands that the federal courts apply their own rule of privilege *where substantial state interests are not infringed*" (emphasis added) (citing *Garner v. Wolfinbarger*, 430 F.2d 1093, 1098 (5th Cir. 1970) (same))).

In *Finch*, the Fifth Circuit held that the federal interest in seeking the truth in a First Amendment case under section 1983 overrode Mississippi's interest in enforcing a state privilege to block disclosure of records of the state Sovereignty Commission. 638 F.2d at 1343-44. (Mississippi created the Sovereignty Commission in 1956 to protect it from "encroachment" by the federal government. *Id.* at 1338 n.2). The *Finch* court found "no strong state interest in avoiding independent federal assessment of the privilege." *Id.* at 1344. It noted that "there is a 'special danger' in permitting state governments to define the scope of their own

---

1271 n.6 (11th Cir. 2004) (citing *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)).

privilege when the misconduct of their agents is alleged." *Id.* Thus, based on federal interests, the Fifth Circuit pierced Mississippi's privilege to investigate the Sovereignty Commission's alleged harassment and illegal surveillance. Here, the Escambia School Board wants to use the federal common law to shield Florida government officials from scrutiny that Florida's legislative privilege would likely allow. Although *Finch* favored a federal interest, its rationale supports the argument that Florida's limited legislative privilege should be used to uncover the truth in this First Amendment case also brought under section 1983.

Other cases rely on the same "analytical approach" in *Finch*. The First Circuit in *In re Hampers*, 651 F.2d 19 (1st Cir. 1981), partially absorbed a Massachusetts state law prohibiting the disclosure of state tax returns in interpreting the federal common law under Rule 501. *Id.* at 22-24. In *In re Hampers*, federal prosecutors sought to enforce a federal grand jury subpoena in a federal criminal tax investigation. *Id.* at 20. Massachusetts sought to block the subpoena under a state law prohibiting disclosure of state tax returns. *Id.* Following the approach in *Finch*, the First Circuit engaged in a "balancing" of federal and state interests, and crafted a rule into the federal common law to embody the purpose of the Massachusetts law, while allowing the federal subpoena to be enforced if it could pass a rigorous test. *Id.* at 23. "We see value," the court wrote, "in preserving in this small area the postures of comity and deference arising from federalism." *Id.*

Rule 501 "does not mean . . . that federal courts should not consider the law of the state in which the case arises in determining whether a privilege should be recognized as a matter of federal law." *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). "[W]here a 'state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule.'" *Id.* (quoting *Lora v. Bd. of Educ.*, 74 F.R.D. 565 (E.D.N.Y.1977)).

District courts have also used state privilege law in a variety of federal question cases. In *Hugley v. Art Institute of Chicago*, 981 F. Supp. 1123 (N.D. Ill. 1997), the federal court in a federal civil rights case applied a state privilege law protecting many documents sought from the Illinois Department of Human Rights. *Id.* at 1126-27. Like other courts faced with the unusual clash between state and federal privilege law, the court wrote that it "must remember that a 'strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *Id.* (quoting *Mem'l Hosp*, 664 F.2d at 1061); *see also Brem v. DeCarlo, Lyon, Hearn & Pazourek, P.A.*, 162 F.R.D. 94, 102 (D. Md. 1995) (applying Maryland medical peer review privilege in federal question discrimination case); *Komlosi v. N.Y. State Off. of Mental Retardation & Dev. Disabilities*, No. 88 CIV. 1792 (JFK), 1992 WL 77544, at *2 (S.D.N.Y. Apr. 3,

1992) (applying New York privilege law in section 1983 civil rights action "in the interests of comity"); *Doe v. St Joseph's Hosp. of Fort Wayne*, No. CIV. A. F83-201, 1987 WL 15462, at *3 (N.D. Ind. Apr. 18, 1987) (applying Indiana peer review privilege in federal question civil rights case).

* * *

The unique characteristics of the legislative privilege in Florida provide a strong basis to apply it in this First Amendment case in federal court. The privilege exists solely to protect state sovereignty and the ability of the state government to function in Florida's unique system of radically transparent government. Because the privilege almost exclusively reflects Florida's own conception of its own government, federal courts should adopt the state's own legislative privilege rather than impose a federal common law privilege at odds with Florida's privilege. Federal courts can easily apply the federal common law privilege in almost all states because the state privilege in the vast majority of states is basically the same as the common law privilege. But Florida is the exception. *See, e.g., Girardeau v. State*, 403 So. 2d 513, 515 n.3. (Fla. 1st DCA 1981) (discussing Florida's unique open government laws). Comity means that the federal courts should enforce Florida's more limited legislative privilege, rather than the nearly unqualified common law privilege, to reflect the balance the Florida Supreme Court has struck between competing values of deference and government transparency. If our constitutional

15

order permits "a single courageous state [to], if its citizens choose, serve as a laboratory" of democracy, *see New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting), then federal courts must allow states to enforce their own enlightened vision of how their governments should operate in the open.

By contrast to Florida's strong interest in its privilege, the federal interest in imposing its common law privilege on Florida officials is weak. Federal courts have virtually no role to play in a state's commitment to open state and local government. The legislative privilege here would not apply to federal officials in Florida, such as members of Florida's congressional delegation. If the Court adopts Amicus' arguments, federal courts in Florida would likely only apply the state legislative privilege law in a handful of cases. Federal courts across the country would continue to apply federal common law in federal question cases involving other privileges, such as the attorney-client privilege, that are litigated far more frequently.

Federal courts do have an interest in maintaining the uniformity of rules in federal courts. But that interest is small here, where Florida "goes against the majority trend of affording an absolute legislative privilege based on the example of federal Speech or Debate Clause precedent." J. Pierce Lamberson, *Drawing the Line on Legislative Privilege: Interpreting State Speech or Debate Clauses in Redistricting Litigation*, 95 Wash. U.L. Rev. 203, 218, 218 n.111 (2017). The need for uniformity is also especially frail where federal courts already apply state

privilege law under Rule 501 in thousands of diversity cases decided each year under 50 different state laws. The federal court's ability to function has not been impacted by federal courts routinely applying state law in thousands of cases.

That federal courts typically do not depart from applying the federal common law privilege in federal question cases also does not mean this Court should not make an exception here, as other courts have done. In fact, the rarity of this exception underscores how applying the Florida legislative privilege would hardly intrude on federal interests. By contrast, applying Florida's legislative privilege promotes the premier federal interest in respect for federalism and comity with the states. It respects Florida's sovereign right to embrace government in the sunshine and determine the limits of the legislative privilege that its own elected officials assert.

To the contrary, one of the "special federal interest[s]" recognized by this Court – the federal interest in finding the truth in First Amendment cases about state government misconduct – favors use of the more limited Florida legislative privilege. *See Finch*, 638 F.2d at 1343. This Court and the U.S. Supreme Court have repeatedly said that "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that 'the public . . . has a right to every man's evidence.'" *Trammel v. United States*, 445 U.S. 40, 50 (1980) (limiting federal privilege for adverse spousal testimony). "As such, [privileges] must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or

17

excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Id.* (citation omitted); *see also Doe No. 1 v. United States*, 749 F.3d 999, 1009 (11th Cir. 2014) (declining to expand the criminal plea negotiation privilege as "there is a presumption against privileges" and "we disfavor newly minted privileges").

## **CONCLUSION**

The Court does not need to reach the issues raised in this amicus brief. It should instead affirm the district court's opinion that the Escambia School Board members acted in an administrative capacity in removing school library books and, therefore, cannot invoke the legislative privilege.

But if the Court decides otherwise, it should not reflexively hold for the first time in this appeal that the legislative privilege applies to the discovery in this case. The Court has not squarely considered the federalism questions raised here, and it should return the case to the district court to study these issues in the first instance. Then, if an appeal followed or another appeal presented the same issue, the Court can review these profound questions of federalism at the appropriate time in the appropriate case.

Date: February 2, 2026

Respectfully submitted,

*/s/ David A. Karp*
David A. Karp (FBN 69926)
Christopher J. Norris (FBN 1011744)
**CARLTON FIELDS, P.A.**
2 MiamiCentral
700 N.W. First Avenue, Suite 1200
Miami, Florida 33136-4118
(305) 539-7280

*Attorneys for Amicus Curiae Florida Center*
*for Government Accountability*

## CERTIFICATE OF COMPLIANCE

I certify this brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) and 11th Circuit Rule 28-1. This brief contains 4,062 words, which is less than one half the word limit of the Appellee's principal brief, and uses Times New Roman 14 point font.

I also certify under Federal Rule of Appellate Procedure 29(4)(E) that no party or party's counsel has authored the brief, in whole or in part or contributed money that funded or was intended to fund the brief.

*/s/ David A. Karp*

## CERTIFICATE OF SERVICE

I certify a true copy of the foregoing was served on February 2, 2026, on the all counsel of record by electronically filing it with the Court through CM/ECF.

*/s/ David A. Karp*